Raymond Pedrick *et al.*, Appellants, *vs.* The Peoria and Eastern Railroad Company, Appellee.

*Opinion filed May 18, 1967.—Rehearing denied September 27, 1967.*

KUHFUSS & RAILSBACK, of Pekin, for appellants.

EUGENE R. JOHNSON and E. RICHARD JOHNSON, both of Peoria, and RICHARD O. OLSON, of Chicago, (MILLER, WESTERVELT & JOHNSON, of counsel,) for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Raymond and Cleo Pedrick, husband and wife, brought this action in the circuit court of Tazewell County seeking damages from The Peoria and Eastern Railroad Company for injuries sustained when their automobile collided with one of defendant's trains at a railroad crossing in Pekin. Defendant's motion for a directed verdict, made at the close of plaintiffs' evidence and reviewed at the close of all of the evidence, was denied. The jury returned a verdict in favor of Raymond Pedrick in the amount of $2500 and for Mrs. Pedrick in the amount of $15,000. Judgments were entered thereon, and defendant's post-trial motions for judgments notwithstanding the verdicts were denied. On appeal, the Third District Appellate Court reversed the judgments without remandment on the ground that the jury's finding that defendant was guilty of negligence was against the manifest weight of the evidence and that plaintiffs were guilty of contributory negligence as a matter of law. (63 Ill. App. 2d 117.) We granted leave to appeal.

The collision took place in Pekin at the point where North Fifth Street and defendant's railroad tracks intersect at right angles. North Fifth Street runs in a north-south direction and defendant's track runs east and west. The Pedrick automobile was being driven in a northerly direction and was struck from the left by defendant's train.

The crossing is protected by two electrically operated

flasher signals, each signal having two red lights which flash on and off when in operation. The intersection is also guarded by two white crossarm signals on which appear the words "Railroad Crossing". As a motorist approaches the intersection from the south, as did Raymond Pedrick, his vision to the west is obstructed by a grocery store building. However, at a distance of 50 feet from the intersection, he can see 75 feet down the tracks in that direction, and, when he gets to within 15 feet of the crossing, his view to the west is totally unobstructed.

The accident occurred about 5:45 P.M. on December 7, 1960. Raymond Pedrick was driving. His wife was a passenger in the front seat and his sister-in-law, Hazel Lindsey, was seated in the rear. Both plaintiffs had been over the crossing a number of times, and were familiar with it. When the car was about 200 feet from the intersection, Cleo Pedrick said to the occupants of the car, "Up and down here is a railroad track." Later, when the car was only 100 feet from the tracks, she stated, "I hear a train." She testified that her husband slowed down when she mentioned that there was a railroad crossing ahead and slowed down even further when she mentioned that she heard a train.

Raymond Pedrick admits that his wife advised him of the crossing and that he heard her statement that she heard a train. He testified that he looked to the left when he was 35 feet and 25 feet from the crossing and, by the time he reached the track he had slowed to a point where he could have stopped his car within 4-5 feet. He also heard the train whistle.

The overwhelming evidence in the record indicates that the train entered the intersection at about 13 miles per hour. While there is some conflict as to whether the bell was ringing and the headlight was on, the only allegation of negligence submitted to the jury was that defendant negligently permitted its train to operate through the intersection without activating the red flasher warning signals.

Ten witnesses testified on the issue of whether the flasher lights were working, three for the plaintiffs and seven for the defendant. On direct examination, Raymond Pedrick testified that he "wouldn't know" whether the flasher lights were on at the time of the collision. However, on cross-examination, he said, "No, there wasn't none * * * [There] just wasn't no lights * * * working * * * I saw no lights at all on either side." He also testified that he saw no car approaching him and did not notice any car following him and that he saw no train headlight and heard no bell.

Cleo Pedrick testified that she "never saw any flasher lights burning prior to the collision" and did not see a train. She also said that she did not see an automobile coming towards their car, and did not know whether a car was following them.

Hazel Lindsey, who also had a lawsuit pending against the defendant, testified that her mental ability had been affected somewhat by the accident, and she could not remember very much about it. She said that "she was sure there were no flasher lights at the crossing" and that she did not hear a whistle. She admitted, however, that, in an earlier deposition, she had stated that she did not know whether she heard a whistle. She said she never saw a train.

Four crewmen from the train testified. Raymond Brown, who was in the caboose of the train, said that he could tell that the headlight was on prior to the accident, because it reflected in the dark, but that he could not tell whether the bell was ringing. He said that after the accident he noticed that the flasher lights were operating on both sides of the crossing. Walter Retzalk, who was the head brakeman on the train, said that the headlight of the train was on bright, but that, from the second engine where he was sitting, he was not able to tell if the bell was working. He also testified that he saw the red flasher working both before and after the collision. Ellridge Horb was the

assigned engineer on the train. He said that the headlight was on bright prior to the accident, that he saw the flasher on the north side of the crossing in operation, that he was on the wrong side of the train to see the other one, but that after the accident he saw them both working. Wilbur Grant, also an engineer, was seated in the cab of the engine. He said that he controlled the headlight and had it turned on bright prior to the collision, and that he also controlled the bell and had it ringing prior to the accident. He further testified that he could see the flashers working before the collision. In addition to the testimony of these crewmen, Loren McKee, defendant's signal maintainer, first testified that "They was off", and then that he had tested the flasher lights on November 28, 1960, and about 2½ hours after the accident, and had found them operating properly on both occasions.

Two disinterested witnesses testified. The first was Thomas Lee Faichney, a section laborer for the Peoria and Pekin Union Railway. He said that he approached the crossing at Fifth Street from the north and saw the flasher signal working when he was 2½ to 3 blocks from the intersection. He said that he stopped when he reached it, and he heard the bell and whistle of the train and saw its headlight. John T. Lowman, an insurance broker, testified that he was following plaintiffs' car prior to the collision. He said he observed the flashers operate when he was approximately 200 feet from the intersection and that he heard the train's whistle and saw its "headlights" prior to the accident.

In our judgment the controlling issue herein is the troublesome, though familiar, question as to the circumstances under which the trial judge may determine that the proof presents no factual question for the jury's consideration and that a verdict should be directed or judgment *non obstante veredicto* entered. While there is no unanimity as to the governing principles, it seems reasonably well settled that

the same standard shall be applied in either case; and such is the law of this State. (*Finley* v. *New York Central Railroad Co.,* 19 Ill.2d 428, 434; *Nutwood Drainage and Levee Dist.* v. *Mamer,* 10 Ill.2d 101, 112.) The difficulty in determining what is or should be the governing principle was well pointed up by Judge Learned Hand in 1932 in *Chamberlain* v. *Pennsylvania Railroad Co.,* (2d cir.) 59 F.2d 986, 987, when he said: "The most that has been said—probably all that can be—is that there comes a point where the evidence no longer justifies any verdict but one." It is apparent that some uncertainty presently exists as to the standard applicable in this State and that a review thereof may be in order. (See the able and interesting discussions in the majority opinion of Mr. Justice Dempsey, concurred in by Mr. Justice Sullivan, and in the dissenting opinion of Mr. Justice Schwartz in *Mesich* v. *Austin,* 70 Ill. App. 2d 334; Londrigan, "Judge or Jury—Who weighs the evidence?" 55 Ill. B. J. 732.)

Generally speaking, there is basic agreement with the statement of Buller, J., in *Company of Carpenters* v. *Hayward* (1 Dougl. 374, 99 Eng. Rep. 241 (King's Bench, 1780)): "Whether there be any evidence, is a question for the Judge. Whether sufficient evidence, is for the jury." The difficulties commence with subsequent efforts to define "any evidence". Part of these difficulties, perhaps, lay in the function of the jury as it first developed when jurors were chosen because of their presumed knowledge of the facts of the case and the parties thereto, and were assumed to, and undoubtedly did, reach a verdict largely based upon their individual and collective knowledge of circumstances wholly unknown to the presiding judge. Illustrative of this are Chief Justice Vaughn's observations in a 1670 *habeas corpus* proceeding which challenged the validity of the punishment of members of a jury which persisted in returning a verdict contrary to the wishes of the court. (*Bushell's* case, Vaughn 135, 124 Eng. Rep. 1006, 1012.) In setting aside the

punishment and indicating his opinion that the court could not direct a verdict, Chief Justice Vaughn predicated the undesirability of such judicial action on the fact that the judge could never know what evidence the jury had, in addition to that before the judge for:

"1. Being return'd of the vicinage, whence the cause of action ariseth, the law supposeth them thence to· have sufficient knowledge to try the matter in issue (and so they must) though no evidence were given on either side in Court, but to this evidence the Judge is a stranger.

"2. They may have evidence from their own personal knowledge, by which they may be assur'd, and sometimes are, that what is depos'd in Court, is absolutely false; but to this the Judge is a stranger, and he knows no more of the fact than he hath learn'd in Court, and perhaps by false depositions, and consequently knows nothing.

"3. The jury may know the witnesses to be stigmatiz'd and infamous, which may be unknown to the parties, and consequently to the Court."

With jurors no longer chosen because of their knowledge of the facts, subsequent evolutionary developments ranging through involuntary nonsuits, demurrers to the evidence and awarding of new trials, have culminated in firmly establishing the power of the court, within constitutional bounds (*Pennsylvania Railroad Co.* v. *Chamberlain,* 288 U.S. 333, 77 L. Ed. 819,) to direct a verdict for either party in appropriate circumstances, (see review of State rules as to direction of verdicts, *post;* but *cf. Bartholomew* v. *Impastato,* (La. App. Ct.) 12 So. 2d 700; *Varallo* v. *Pennsylvania Railroad Co.,* (Pa.) 225 A.2d 552), while equally firmly preserving substantially disputed factual issues for resolution by the jury.

The formulae evolved by the courts for determining when the circumstances are appropriate for taking the case from the jury are many and varied, and understandably so, for there is no mathematically exact standard or rule (but

*cf.* Sutherland, J., speaking for the Supreme Court in *Chamberlain,* at p. 343) which will enable the trial judge or reviewing court to ascertain precisely when the proof in a given case presents a factual situation with sufficient certainty to justify removing it from a jury's consideration. And not only do the rules vary as between the States, but different statements of governing principles within a State are not uncommon. See, *e.g.,* Note, "Evidence—Directed Verdicts—Inferences from Circumstantial Evidence". 34 Neb. L. Rev. 102, 103.

Nor has the virtue of consistency been apparent to any greater extent in the Federal courts where the earlier rule, first suggested in *Pleasants* v. *Fant,* 89 U.S. 116, 22 L. Ed. 780, and specifically reaffirmed in *Pennsylvania Railroad Co.* v. *Chamberlain,* 288 U.S. 333, that a verdict should be directed whenever a court would be bound to set aside a contrary verdict, seems to have been abandoned *sub silentio* in subsequent decisions in which the Supreme Court indicates that a determination of the sufficiency of the evidence to warrant consideration by the jury should be made by looking *only* at the evidence and reasonable inferences therefrom which supports the party against whom a directed verdict is sought (*Wilkerson* v. *McCarthy,* 336 U.S. 53, 93 L. Ed. 497; *Tiller* v. *Atlantic Coast Line Railway Co.,* 323 U.S. 574, 89 L. Ed. 465; *Bailey* v. *Central Vermont Railway, Inc.,* 319 U.S. 350, 87 L. Ed. 1444). The prevailing lack of certainty as to the rule in the Federal courts is apparent when *Martin K. Eby Construction Co.* v. *Neely,* (10th cir.), 344 F.2d 482, *cert.* granted, 382 U.S. 914, which applied the *Chamberlain* rule authorizing a directed verdict where a contrary verdict would be set aside, is compared with *Continental Baking Company* v. *Utah Pie Company,* (10th cir.), 349 F.2d 122, *cert.* granted, 382 U.S. 914, decided by a different panel, in which it was held that a motion to direct a verdict should be denied where reasonable men might differ as to the result.

There is, of course, no problem when there is literally *no*

evidence for one or the other of the parties, for in no case is a directed verdict more appropriate. (*Cf. Varallo* v. *Pennsylvania Railroad Co.*, (Pa.) 225 A.2d 552; *Chisholm* v. *Hall*, (N.C.) 121 S.E.2d 726.) While it has been stated that a "mere scintilla" of evidence to the contrary would prevent a directed verdict, that rule, if ever recognized in this country, has been largely abandoned (see Wigmore on Evidence, 3d ed. sec. 2494) although the "scintilla" rule itself prevails in one State (*T. R. Miller Mill Co.* v. *Ralls*, (Ala.) 192 So. 2d 706; *Fidelity Service Ins. Co.* v. *Jones*, (Ala.) 191 So. 2d 20). The large majority, however, require something more, and in addition to the variations prevailing in defining that "something more", there is some lack of unanimity as to whether all the evidence in a case or only the evidence against the party who has moved for a directed verdict may be considered by the court in determining whether the additional requirements have been met. However, this question is no longer debatable in this State, for *Carter* v. *Winter*, 32 Ill.2d 275, 282; *Smith* v. *Bishop*, 32 Ill.2d 380, 383-4; *Zank* v. *Chicago, Rock Island and Pacific Railroad Co.*, 17 Ill.2d 473, 477 and *Tucker* v. *New York, Chicago and St. Louis Railroad Co.*, 12 Ill.2d 532, 534, all unmistakably indicate that we adhere to the former view. The issue upon which there should be clarification by us is the precise standard to be applied in this State to determine when a verdict should be directed or a judgment entered *n.o.v.*

This court has said with some frequency that negligence and contributory negligence become questions of law when all of the evidence, viewed in its aspect most favorable to the party against whom the court would rule, is such that reasonable minds would reach the same conclusion. (See, *e.g., Jines* v. *Greyhound Corp.*, 33 Ill.2d 83, 86-87; *Geraghty* v. *Burr Oak Lines, Inc.*, 5 Ill.2d 153, 162; *Sims* v. *Chicago Transit Authority*, 4 Ill.2d 60, 67.) An apparently differing standard has been expressed in some of our decisions, to-wit: when

all the evidence is considered in its light most favorable to the party against whom the verdict would be directed, together with all reasonable inferences therefrom, and it appears that there is no evidence in favor of the nonmovant on an essential issue in the case, it is the trial court's duty to direct the jury accordingly (*Smith* v. *Bishop*, 32 Ill.2d 380, 384; *Carter* v. *Winter*, 32 Ill.2d 275, 282; *Zank* v. *Chicago, Rock Island and Pacific Railroad Co.*, 17 Ill.2d 473, 477). That no substantial differences between these rules was thought to exist is evidenced by the fact that, in at least two cases in which we stated the any-evidence test, we also quoted the reasonable-man principle. *Zank*, p. 480; *Tucker* v. *New York, Chicago and St. Louis Railroad Co.*, 12 Ill.2d 532, 536. See also *Seeds* v. *Chicago Transit Authority*, 409 Ill. 566, 570.

Even though we have not intended to establish two separate rules, the language accompanying the statement of the rules lends credence to a notion that one standard has been established whereby trial courts decide whether to direct verdicts and by which these decisions are reviewed, and another has been established whereby reviewing courts decide when negligence and contributory negligence become questions of law. This notion results from the fact that the any-evidence standard has always been stated in relation to the direction of verdicts, while, in contradistinction to this, no case has been found since *Briske* v. *Village of Burnham*, 379 Ill. 193, in which we said that the reasonable-man test should be applied for this purpose (*cf. Seeds*), the latter standard having consistently been stated as determining the circumstances under which negligence or contributory negligence becomes a question of law. Logic demands that one rule govern both the direction of verdicts and determination of the presence or absence of negligence or contributory negligence as a matter of law, for in both situations the issue is whether a court or the jury should decide the negligence issue.

The desirability of the rule governing all such cases should be measured in light of the functions served thereby. Trial courts direct verdicts in order to promote the efficient and expeditious administration of justice where no substantial factual disputes exist. To the same end they enter judgments *n.o.v.*, and reviewing courts are authorized to finally decide negligence issues contrary to verdicts, and thus avoid unnecessary retrials, in situations where verdicts are not factually sustainable. The fact that our "any evidence" rule has not always operated to the satisfaction of this court is manifest from the concurrent presence of the "reasonable men" test, and the fact that there are cases in which the evidence, when viewed in its entirety and in its aspect most favorable to the party against whom the court would rule, so overwhelmingly favors one party that an opposite verdict must always be set aside irrespective of the number of times the case may be tried even though some evidence exists which supports the verdict and satisfies the "any evidence" rule. Under such circumstances there is no real reason for trial judges to continue to submit the case to successive juries, or, in the absence of some probability that new or different evidence would be available upon a subsequent trial, for reviewing courts to remand for new trials (see *Heideman* v. *Kelsey,* 19 Ill.2d 258, 267-8; *Graham* v. *Deuterman,* 244 Ill. 124; *City of Spring Valley* v. *Spring Valley Coal Co.,* 173 Ill. 497, 506-7). Clearly, the constitution does, and judges should, carefully preserve the right of the parties to have a substantial factual dispute resolved by the jury, for it is here that assessment of the credibility of witnesses may well prove decisive. (See Ill. Const. art. II, sec. 5; Note, 107 U. Pa. L. Rev. 217.) But the presence of *some* evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all of the evidence, retain such significance. As the light from a lighted candle in a dark room seems substantial but disappears when the lights are turned on, so may weak evidence fade when the

proof is viewed as a whole. Constitutional guaranties are not impaired by direction of a verdict despite the presence of some slight evidence to the contrary (*Chamberlain;* Blume, "Origin and Development of the Directed Verdict," 48 Mich. L. Rev. 555, 576-7), for the right to a jury trial includes the right to a jury verdict only if there are factual disputes of some substance.

It is both interesting and helpful to consider the standards prevailing in our sister jurisdictions as indicated in recent decisions. While these standards vary, all States apparently agree that in determining whether a verdict shall be directed, the evidence and all reasonable inferences therefrom shall be construed against the movant. It should be noted that differences of a sometimes substantial nature appear in the rules expressed from case to case within individual States, and the rules below, indicated as prevailing, quite often represent that most recently stated, or that appearing in most of the cases, or our attempt to refine a standard from differing but apparently reconcilable language in the opinions of the highest court of the State.

The courts in almost one half of the States direct verdicts when it can be said that only one conclusion is reasonable (or permissible or legitimate), or when reasonable (or fair-minded or impartial) men cannot differ in the conclusion to be reached from the evidence. Connecticut—*Johnson* v. *Consolidated Industries, Inc.,* 218 A. 2d 380; *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 213 A. 2d 449. Delaware— *Parks* v. *Ziegler,* 221 A. 2d 510; *Ebersole* v. *Lowengrub,* 208 A. 2d 495. Florida—*Bruce Construction Corp.* v. *State Exchange Bank,* 102 So. 2d 288; *Dambakly* v. *Mason,* 194 So. 2d 35 (Dist. Ct. App.). Hawaii—*Chambers* v. *City and County of Honolulu,* 406 P. 2d 380, rehearing denied, 407 P. 2d 592; *Young* v. *Price,* 395 P. 2d 365. Idaho—*Clements* v. *Jungert,* 408 P. 2d 410; *Conklin* v. *Patterson,* 379 P. 2d 428. Kansas—*McKinney* v. *Cochran,* 419 P. 2d 931; *Gardner* v. *Pereboom,* 416 P. 2d 67. Maine—*MacLean* v. *Jack,*

198 A. 2d 1; *Martin* v. *Deschaine,* 189 A. 2d 569. (Also set forth in the Maine cases is the rule that a verdict can be directed when a contrary verdict could not stand.) Maryland —*Plitt* v. *Greenberg,* 219 A. 2d 237; *Dunnill* v. *Bloomberg,* 179 A. 2d 371. Michigan—*In re Wood's Estate,* 132 N.W. 2d 35; see also *Milliman* v. *Aurand,* 119 N.W.2d 602; *Goldberg* v. *Koppy Tool & Die Co.,* 113 N.W.2d 770. Missouri— *Greiser* v. *Western Supplies Co.,* 406 S.W.2d 13; *Buff* v. *Loch,* 396 S.W.2d 263. Montana—*Parini v. Lanch,* 418 P. 2d 861; *Jackson* v. *William Dingwall Co.,* 399 P. 2d 236. Nebraska—*LeMieux* v. *Sanderson,* 142 N.W.2d 557; *Costello* v. *Simon,* 141 N.W.2d 412. New Mexico—*Tabet* v. *Sprouse-Reitz Co.,* 409 P. 2d 497; *Jones* v. *New Mexico School of Mines,* 404 P. 2d 289; *cf. Hole* v. *Womack,* 407 P. 2d 362. New York—*Blum v. Fresh Grown Preserve Corp.,* 54 N.E.2d 809; *Holmberg* v. *Donohue,* (App. Div.) 262 N.Y.S. 2d 127; *Copp* v. *Bowser,* (App. Div.) 254 N.Y.S. 2d 200; *cf. Sadowski* v. *Long Island Railroad Co.,* 55 N.E.2d 497. (A verdict can be directed only where there is no conflict in the evidence, reasonable men cannot differ in the conclusion to be reached from the evidence, and where the issues do not depend upon credibility of witnesses.) Ohio—*Peters* v. *B. & F. Transfer Co.,* 219 N.E.2d 27; *Ralston* v. *Grinder,* 221 N.E.2d 602 (Ct. App.). Rhode Island—*Morrarty* v. *Reali,* 219 A. 2d 404; *McVeigh* v. *McCullough,* 192 A. 2d 437. South Carolina—*Carter* v. *Beals,* 151 S.E.2d 671; *Cooper* v. *John Hancock Mutual Life Ins. Co.,* 151 S.E.2d 668. Utah—*Hall* v. *Blackham,* 417 P. 2d 664; *Lemmon* v. *Denver & R. G. W. R. Co.,* 341 P. 2d 215. Wisconsin—*Koczka* v. *Hardware Mutual Fire Ins. Co.,* 138 N.W.2d 737; *Jacobson* v. *Greyhound Corp.,* 138 N.W.2d 133.

A substantial number of States apply this test with the additional requirement that there can be no conflict in the evidence. Colorado—*Liber* v. *Flor,* 415 P.2d 332; see also *Husser* v. *School District No. 11 in County of El Paso,* 413

P. 2d 906; *Schaffner* v. *Smith,* 407 P. 2d 23. Georgia—*Security Life & Trust Co.* v. *Smith,* 141 S.E.2d 405; *Kesler* v. *Kesler,* 134 S.E.2d 811. Indiana—*State Farm Life Ins. Co.* v. *Spidel,* 202 N.E.2d 886; *Whitaker* v. *Borntrager,* 122 N.E.2d 734. Iowa—*Tillotson* v. *Schwarck,* 143 N.W.2d 284; *Demers* v. *Currie,* 139 N.W.2d 464. Oregon—*Young* v. *Crown Zellerbach Corp.,* 417 P. 2d 394; *Rusho* v. *Miller,* 398 P. 2d 191. Tennessee—*Poe* v. *Atlantic Coast Line R. Co.,* 326 S.W.2d 461: *Caldwell* v. *Knox Concrete Products, Inc.,* 391 S.W.2d 5 (Ct. App.); see also *James* v. *Metropolitan Government of Nashville & Davidson County,* 404 S.W.2d 249 (Ct. App.); *cf. Davis* v. *Sparkman,* 396 S.W.2d 91 (Ct. App.); *Hudson* v. *Stepp,* 393 S.W.2d 301 (Ct. App.). West Virginia—*Hollen* v. *Linger,* 151 S.E.2d 330; *Alexander* v. *Jennings,* 149 S.E.2d 213. In the only recent Nevada case that was found this standard was stated, but the court also set out another, possibly conflicting, standard in the same case, *i.e.,* a directed verdict is proper only in those cases in which the evidence is so overwhelming in favor of one party that any other verdict would be contrary to law. *Bliss* v. *DePrang,* 407 P. 2d 726.

Virginia applies the first stated test—the reasonable-man test—with an additional requirement that the conclusion to be drawn must not depend on the weight given to the testimony in the case. *Minter* v. *Clements,* 143 S.E.2d 847; *Mills* v. *Wells,* 129 S.E.2d 705.

A third standard is that a verdict will be directed when a contrary verdict could not be allowed to stand. Arizona—*Johnson* v. *Board of Education,* 419 P. 2d 52; *Robledo* v. *Kopp,* 401 P. 2d 419. Kentucky—*Gregory* v. *Paducah Midstream Service,* 401 S.W.2d 40; see also *Doan* v. *Griffith,* 402 S.W.2d 855; *Lee* v. *Tucker,* 365 S.W.2d 849. (In actual practice Kentucky appears to apply the reasonable-man test, for a verdict cannot there be sustained when reasonable men could not reach that verdict.) Massachusetts—*Adams* v. *Herbert,* 188 N.E.2d 577; *cf. West* v. *Molders Foundry Co.,*

171 N.E.2d 860; *Hannon* v. *Hayes-Bickford Lunch System,* 145 N.E.2d 191. Minnesota—*Johnson* v. *Moore,* 146 N.W. 2d 599; *Carlson* v. *Rand,* 146 N.W.2d 190. Mississippi— *Colson* v. *Sims,* 180 So. 2d 327; *Montague* v. *Jones,* 180 So. 2d 316. Oklahoma—See *St. Louis S. F. R. Co.* v. *Chandler,* 422 P. 2d 845; *Lively* v. *Davis,* 410 P. 2d 851; *Rogers* v. *Cato Oil & Grease Co.,* 396 P. 2d 1000. South Dakota—*Cowan* v. *Dean,* 137 N.W.2d 337; see also *Langdon* v. *Reuppel,* 134 N.W.2d 293; *cf. Weidner* v. *Lineback,* 140 N.W.2d 597; *Parham* v. *Dell Rapids Township in Minnehaha County,* 122 N.W.2d 548. (As in Kentucky, South Dakota applies the reasonable-man test in actual practice, for there a verdict contrary to the directed verdict would have to be set aside when reasonable men could conclude only in accordance with the directed verdict.)

Three States do not allow directed verdicts if there is any evidence to the contrary. North Dakota—*State Automobile & Casualty Underwriters* v. *Skjonsby,* 142 N.W.2d 98; *Anderson* v. *Stokkeland,* 125 N.W.2d 665; *Hadland* v. *St. Mark's Evangelical Lutheran Church,* 111 N.W.2d 775. (However, in North Dakota a trial court will be reversed for erroneously directing a verdict only if it can be said that his action was prejudicial *(Anderson; Hadland)*; and such occurs only when reasonable men could differ in the conclusions to be reached from the evidence.) Pennsylvania— *Heffernan* v. *Rosser,* 215 A. 2d 655; *Kopar* v. *Mamone,* 215 A. 2d 641; *cf. Varallo* v. *Pennsylvania R. Co.,* 225 A. 2d 552. Texas—*Humphries* v. *Kirkley,* 410 S.W.2d 196 (Civ. App.); *Couch* v. *Hale,* 404 S.W.2d 920 (Civ. App.); *Billingsley* v. *Southern Pacific Co.,* 400 S.W.2d 789 (Civ. App.). Washington does not allow a directed verdict if there is any evidence or reasonable inference in favor of the nonmovant. *(Browning* v. *Ward,* 422 P. 2d 12; *Helman* v. *Sacred Heart Hospital,* 381 P. 2d 605; *cf. Carrieri* v. *Bush,* 419 P. 2d 132.) In Vermont, a verdict cannot be directed if there is evidence which fairly and reasonably justifies a con-

trary verdict. (*LaFaso* v. *LaFaso,* 223 A. 2d 814; *Baldwin* v. *State,* 223 A. 2d 556.) Alabama forbids the direction of verdicts where there is a scintilla of evidence to the contrary. (*T. R. Miller Mill Co.* v. *Ralls,* 192 So. 2d 706; *Fidelity Service Ins. Co.* v. *Jones,* 191 So. 2d 20.) Two States require substantial evidence opposing the movant to prevent the direction of a verdict. Arkansas—*Shearer* v. *Morgan,* 401 S.W.2d 21; *Huffman Wholesale Supply Co.* v. *Terry,* 399 S.W.2d 658. (In actual practice Arkansas refuses to direct a verdict when there is a conflict in the evidence or where reasonable men can draw different conclusions, because if these two requirements are not met there is said to be substantial evidence against the moving party.) California— *Taylor* v. *Centennial Bowl, Inc.,* 416 P.2d 793; *Beck* v. *Kessler,* 45 Cal. Rptr. 237 (Dist. Ct. App.).

Of all the States in which recent cases were found, North Carolina is the most restrictive, for it allows directed verdicts only when the evidence presents a question of law based on admitted facts. *Chisholm* v. *Hall,* 121 S.E.2d 726; see also *Flintall* v. *Charlotte Liberty Mutual Ins. Co.,* 131 S.E.2d 312.

It is apparent from the foregoing compilation that several of the rules have substantial support, including that which authorizes direction of a verdict whenever a contrary verdict would be set aside. A persuasive argument can be made in favor of this position, for there is no reason to deny a motion for a directed verdict when the court is convinced any other verdict must always be vacated. We have rather carefully preserved the distinction between the evidentiary situation which will require a new trial (verdict against the manifest weight of the evidence (*Lau* v. *West Towns Bus Co.,* 16 Ill.2d 442, 451, *cert.* den. 361 U.S. 127), and that justifying direction of a verdict or judgment *n.o.v.* There is, in our judgment, excellent reason for so differentiating to be found in the radically different results of allowance of the two motions, and we believe a more nearly conclusive evidentiary

situation ought to be required before a verdict is directed than is necessary to justify a new trial. It is not our intention by this opinion to alter this concept.

We are not completely certain that the rule heretofore used in this State in determining when questions of negligence and contributory negligence become questions of law, *i.e.,* only when all reasonable men would agree that due care had or had not been exercised, is the most workable in practical application. Our dissatisfaction stems from the fact that there is at least a surface incongruity in a trial judge saying all reasonable men agree that the proof established the presence or absence of due care when 12 jurors have just reached a contrary conclusion. And it seems even more incongruous for reviewing courts to so state when the trial judge and jury reached the opposite result, when the trial and reviewing courts disagree or the members of a reviewing court disagree among themselves that such is the case.

Nor, as earlier stated, does it seem to us that the any-evidence rule or any of its variants (no conflict in the evidence; scintilla rule) is entirely satisfactory, for literal application thereof prohibits direction of a verdict even though the evidence relied upon in opposition is so overwhelmingly rebutted that no verdict based thereon could possibly stand. In such instances no action other than a directed verdict is consonant with efficiency in our judicial system and with a fair and expeditious termination of litigation.

Rather, we believe the rule is best which in some form finds favor in other States heretofore indicated and which has, in part, been heretofore recognized in this State. In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

In reaching our conclusion we are not unaware of prior arguments indicating that judges will be encouraged hereby

to decide more negligence cases, thus unconstitutionally invading the province of the jury, and that more appeals will necessarily follow. That a substantial increase in the proportion of directed verdicts or judgments *n.o.v.* will be a necessary result seems highly questionable; that more appeals will result likewise seems debatable, and, in any event, the current delay at the trial level is of greater social concern than are our appellate caseloads. And since it is well settled that trial courts may constitutionally direct verdicts, minor variations in the rules governing such action can scarcely render it unconstitutional.

Turning to the facts of the instant case, the most that can be said for plaintiffs' evidence that the flashers were not operating is that it is highly equivocal. Raymond Pedrick's testimony wavered from a statement that he did not know if the flashers were operating, to one that they were not operating, and finally to one that he did not see them operate. The probative value of this testimony is reduced by the fact that he claimed not to have seen either the cars behind or approaching him or the train headlight, and he claimed not to have heard its bell, since no witness disputed the presence of the cars or the operation of the bell and headlight. Cleo Pedrick merely said she "did not see" the flashers operate, and Hazel Lindsey, who said that they did not operate, admitted that her mental powers were affected by the accident, that she was also suing defendant for the injuries she sustained in the accident, and that she had made inconsistent statements as to whether she had heard the whistle.

When the dubious probative value of the testimony of the plaintiffs and Hazel Lindsey is considered in the light of the unequivocal testimony by persons with no apparent interest in the outcome of this lawsuit and the corroborative testimony of the railroad employees, we believe it may fairly be said that all of the evidence, viewed most favorably to plaintiffs so overwhelmingly favors defendant that no contrary verdict based on this evidence could ever stand. De-

fendant's motion for a directed verdict at the close of the evidence should have been allowed.

The judgment of the Third District Appellate Court was correct and is affirmed.

*Judgment affirmed.*