ANTOINETTE NAPOLITANO, Plaintiff-Appellant, *v.* MATTHEW I. MULLEN, Defendant-Appellee.

Second District   No. 79-158

Opinion filed March 14, 1980.

Francis P. Smith, of Shaheen, Lundberg, Callahan & Burke, of Chicago, for appellant.

James S. Jendryk, of Querrey, Harrow, Gulanick & Kennedy, of Wheaton, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Plaintiff, Antoinette Napolitano, brought a negligence action and sought to recover damages for personal injuries arising from an automobile collision with the defendant, Matthew Mullen. The jury returned a verdict in favor of the defendant. Plaintiff appeals on the grounds that the trial court erred in not granting her motion for judgment *n.o.v.* on the issue of liability or in the alternative for a new trial.

The collision in question occurred in Downers Grove, Illinois, at the intersection of Carpenter and Adelia Streets. At approximately 10:30 a.m. on Friday, August 26, 1977, plaintiff was riding in the front seat of an automobile driven by her son, Robert. The weather was clear and sunny. Robert, age 15 at that time, was driving on a learner's permit. Robert was driving in a southerly direction on Carpenter Street. Defendant, Matthew Mullen, also a minor, was driving in a westerly direction on Adelia. Both streets are two lane, two-way streets having neither parking lanes nor shoulders. The speed limit on both streets is 30 m.p.h.

Robert Napolitano testified that he was driving south on Carpenter at approximately 20-25 m.p.h. and that he saw defendant's car for the first time when he himself was 40 feet from the intersection. He said he couldn't tell how many feet defendant Mullen's car was from the intersection when he first observed it, but that he estimated it at approximately five car lengths. He clarified this by stating that he first saw defendant's car when it was at a mailbox on Adelia, which was estimated by both plaintiff and defendant to be 45-50 feet from the intersection. Robert stated that he continued to watch defendant's car, and when he was approximately 20 feet from the intersection, he slammed on the brakes, causing the car to slide and come to a complete stop 2-3 feet into the intersection. The passenger side of the defendant's car struck the front left corner of his car.

Plaintiff, Mrs. Napolitano, testified that the car she was riding in was 15-20 feet from the intersection when she first saw defendant's car. She observed that defendant's car was about the same distance from the intersection. She estimated both cars to be traveling between 20-25 m.p.h.

Mrs. Napolitano continued to watch defendant's car, and when it appeared that defendant was not going to stop, she yelled at her son to stop. At this point it appeared to Mrs. Napolitano that the car she was riding in was about 5 feet from the intersection, although she could not be completely accurate.

Defendant, Matthew Mullen, testified that he and plaintiff were traveling between 20 and 25 m.p.h. and that he was adjacent to the mailbox on Adelia, about 50 feet from the intersection, when he first saw plaintiff's car. He further testified that his car was closer to the intersection than plaintiff's vehicle, although he could not make a reasonable estimate as to the amount of difference. He was, however, able to indicate the approximate location of his car, by placing a mark on plaintiff's exhibit no. 1.

Defendant stated that he did not continue to watch plaintiff's car after he first observed it, but instead continued through the intersection, taking his foot off the accelerator but not applying the brakes. Mullen further testified that the only time he saw the Napolitano car was when he was opposite the mailbox. On his deposition he had stated that he had not seen the other vehicle until he was entering the intersection. The investigating officer testified that according to his accident report Mullen stated that he didn't see the Napolitano vehicle until he collided with it in the intersection. Photographs of the vehicles disclosed damage to the left front corner of plaintiff's car and the displacement of the front bumper to the right (towards the passenger's side of the car). Damage to the defendant's car was shown to be principally across the passenger door.

Regarding her injury, plaintiff further testified that she had braced herself during the collision by placing her hands upon the dashboard and that she experienced, immediately after the accident, pain in her left shoulder and arm. When the pain did not subside after one week, she called Dr. Tansey, who could not see her until September 8. At that time, he took X rays, examined her, and diagnosed that she sustained a fracture of the greater tuberosity of the left humerus at the shoulder joint. Plaintiff further testified that nothing else happened to her arm between the time of the accident and the time she saw the doctor.

Dr. Tansey testified that this specific type of fracture is often caused by a trauma of the type plaintiff sustained on August 26, 1977. He further testified that it was common for a patient with this kind of fracture to ignore it and think that the pain will subside with continued use, but that normally such pain doesn't subside. Dr. Tansey expressed his opinion that the injuries sustained by the plaintiff were the result of trauma such as received by plaintiff in the accident in question. He further testified that the injuries were permanent.

Defendant introduced testimony of the investigating officer who

stated that he inquired of all the parties at the scene regarding injury, one of the individuals being the plaintiff, and that no one stated he was injured. Defendant also introduced testimony by defendant Mullen, who disclosed that immediately following the collision plaintiff advised him that she was not injured. Plaintiff's father testified that, in a telephone conversation with the plaintiff, held approximately 2½ hours after the accident, the plaintiff advised him that no one was hurt.

Since the jury in answer to a special interrogatory found the plaintiff not guilty of any contributory negligence, the verdict in favor of the defendant necessarily had to be predicated on a finding by the jury that the plaintiff had failed to establish by a preponderance of the evidence either (1) that the defendant was negligent as charged; or (2) that his negligence was a proximate cause of plaintiff's injury. Stated another way, to sustain her motion for a judgment *n.o.v.* on liability, plaintiff must establish both of these issues such that this court must conclude, after considering all of the evidence in its aspect most favorable to the defendant, that the evidence so overwhelmingly favors the plaintiff that a contrary finding could never stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

As stated in *Lamberes v. Northern Cartage Co.* (1967), 86 Ill. App. 2d 311, 313, we have here a classic intersection collision case and precisely the kind of case which prompted the enactment of statutes to control vehicles entering intersections. Section 11—901 of the Illinois Vehicle Code provides in part:

> "(a) When 2 vehicles approach or enter an intersection from different roadways at approximately the same time, the driver of the vehicle on the left must yield the right-of-way to the vehicle on the right." (Ill. Rev. Stat. 1977, ch. 95½, par. 11—901.)

The defendant's testimony in this case, when viewed most favorably to him, discloses that, as he approached this open intersection, he was about 50 feet from the intersection when he first observed plaintiff's car approaching the intersection to his right; both his car and plaintiff's were traveling at approximately 20-25 m.p.h.; and he was closer to the intersection than plaintiff, but could not estimate how much closer. Defendant further stated that he did not continue to watch plaintiff's car after he first observed it, but instead continued into the intersection, taking his foot off the accelerator, but not applying the brakes. His automobile was struck at the passenger door by plaintiff's vehicle.

■■■ It was defendant's affirmative duty under the right-of-way statute to look to his right to ascertain if any other automobile was approaching the intersection from his right and having so observed an approaching automobile, to take such precautions as to avoid a collision. (*Lamberes*, 86 Ill. App. 2d 311, 313, citing *McCarthy v. Fadin* (1925), 236 Ill. App. 300,

301.) Defendant, having observed plaintiff's vehicle approaching the intersection at approximately the same speed as he was traveling, blithely continued forward without again looking or applying his brakes. Under the *Pedrick* standard, the defendant is guilty of negligence as a matter of law.

Plaintiff must also establish that as a matter of law she is entitled to a finding that the negligence of the defendant was a proximate cause of her injuries. On this issue defendant did not present any evidence controverting the evidence adduced by plaintiff other than evidence that plaintiff, at the scene of the accident and within 2½ hours after, did not complain of pain. Dr. Tansey's opinion that plaintiff's injuries were causally related to the accident and that they were permanent is not controverted. Plaintiff's testimony that she suffered no other injury to her left arm and shoulder between the day of the accident and the day she sought treatment from Dr. Tansey is also uncontroverted. Again applying the standard of *Pedrick*, thus viewing the evidence in its aspect most favorable to the defendant, we find that the evidence on this issue so overwhelmingly favors the plaintiff that a finding in favor of the defendant could never stand.

■■ Since we have found that the plaintiff is entitled as a matter of law to a directed finding in her favor on both the issues of negligence and proximate cause, and since the jury found that plaintiff was not guilty of contributory negligence, it follows that all the elements that are necessary for a directed verdict on liability have been met. We therefore find that plaintiff is entitled to a judgment *n.o.v.* in her favor on the issue of liability.

It is the order of this court that the verdict of the jury in favor of the defendant be set aside and the judgment entered thereon is reversed and this cause is remanded to the Circuit Court of Du Page County, 18th Judicial Circuit, for a trial on the issue of plaintiff's damages only.

Reversed and remanded.

SEIDENFELD, P. J., and WOODWARD, J., concur.