LILLIAN R. CAPODAGLI, Adm'x of the Estate of David P. Capodagli, Deceased, Plaintiff-Appellant, v. ROBERT D. WILSON, Chief of Police of the City of Markham, Defendant-Appellee.

First District (5th Division)   No. 1—86—2491

Opinion filed March 10, 1989.

Corey E. Meyer and Michael J. McArdle, both of Michael J. McArdle, Chartered, of Chicago, for appellant.

Richard L. Hutchinson, of Tinley Park, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

The plaintiff, Lillian R. Capodagli, administratrix of the estate of David Capodagli, appeals from the trial court's judgment notwithstanding the verdict in favor of defendant, Robert D. Wilson, chief of police of the City of Markham. We affirm. Our reasons follow.

On July 5, 1980, 19-year-old David Capodagli (David), while under the influence of alcohol and methaqualone, was arrested by City of Markham police for outstanding warrants. He was placed, alone, in a City of Markham jail cell. One hour later, David was found hanging in the cell by his tank top t-shirt. He had committed suicide.

Plaintiff filed the instant complaint under the Civil Rights Act (42 U.S.C. §1983 (1982)) as the administratrix of the estate of David Capodagli. In the complaint, plaintiff alleged that David was denied his right under the fourteenth amendment to the Constitution of the United States not to be deprived of his life without due process of law. (U.S. Const., amend XIV.) Plaintiff's complaint alleged that the policies of the defendant, in his official capacity as the City of Markham police chief, which permitted (1) prisoners known to be intoxicated to be

placed in a jail cell without first undergoing a medical examination to ascertain their well being, and (2) intoxicated prisoners to be detained in a jail cell without being visually observed at periodic intervals, were inherently deficient procedures for detaining prisoners.

Following trial, the jury returned a verdict in favor of plaintiff and awarded plaintiff $375,000 in damages. However, the trial court entered a judgment notwithstanding the jury's verdict in favor of defendant.

On this appeal, plaintiff maintains that she is entitled to a reversal of the judgment in favor of defendant and that she is entitled to a re-entry of the judgment because the trial court did not apply the correct legal standards governing entry of a judgment notwithstanding the verdict. Conversely, the defendant maintains that the trial court used the correct standards for entry of a judgment notwithstanding the verdict, as set forth in section 2—1202 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1202). It is there provided:

> "Relief after trial may include the entry of judgment if under the evidence in the case it would have been the duty of the court to direct a verdict without submitting the case to the jury."

■ The standard governing review of a trial court's decision to enter judgment notwithstanding the verdict is announced in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494. In *Pedrick* the court stated that judgment notwithstanding the verdict may be entered "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d at 510.) Such is the instant case. The issue at trial in the case at bar was whether David was denied his fourteenth amendment constitutional right not to be deprived of his life without due process by policies which the defendant, in his official capacity, enacted and had in force.

■ Local governing bodies and local officials in their official capacity may be sued under 42 U.S.C. section 1983 for monetary damage, declaratory judgment, and injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. *Monell v. Department of Social Services* (1978), 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018.

■ Section 1983 (42 U.S.C. §1983 (1982)) provides that every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or "causes to be subjected," any

person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party. In an action brought under section 1983, "the initial inquiry must focus on whether the two essential elements to a section 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Williams v. City of Lancaster* (E.D. Pa. 1986), 639 F. Supp. 377, 380; *State Bank v. Camic* (7th Cir. 1983), 712 F.2d 1140; *Parratt v. Taylor* (1981), 451 U.S. 527, 535, 68 L. Ed. 2d 420, 428, 101 S. Ct. 1908, 1913.

In the instant case there is no question that the defendant acted under color of State law. The trial court found, however, that plaintiff failed to demonstrate that any policy instituted by defendant violated David's fourteenth amendment right not to be deprived of his life without due process. We agree.

In *State Bank v. Camic* (7th Cir. 1983), 712 F.2d 1140, plaintiff sued on behalf of the estate of a jailed prisoner, who committed suicide while imprisoned in the city jail. The prisoner was intoxicated and violently resisted arrest and booking, which prompted one officer to note that the prisoner was acting in a "freaky" manner. About an hour later, the prisoner was found fatally hanged by his shirt in his cell. The police department regulations required hourly cell checks. The district court granted defendant's motion for summary judgment on the grounds that failing to prevent detainee's suicide did not constitute a constitutional deprivation. Plaintiff appealed. On appeal, the court held that defendants were entitled to summary judgment under section 1983 where it was undisputed that defendants had no knowledge of or any reason to suspect that the prisoner had suicidal tendencies. The court further reasoned that "[k]nowing that [defendant] was behaving violently, or was acting in a 'freaky' manner is not synonymous with having reason to know that the violence might become self-directed." (712 F.2d at 1146.) The court further held that "[e]ven if the defendants disregarded one or more of their established procedures, such as checking the cells every hour or effectively monitoring by visual or auditory systems the activities of prisoners incarcerated *** the actions of the defendants do not constitute deliberate disregard for the possibility that [detainee] would take his own life." 712 F.2d at 1146.

In *Williams v. City of Lancaster* (E.D. Pa. 1986), 639 F. Supp. 377, the plaintiff brought, against the defendant, a civil rights and wrongful death action in which plaintiff sought to recover damages for the death of a prisoner who, while intoxicated, hung himself in his cell

while incarcerated in the city jail. State regulations required a cell check every half hour. The check was routinely skipped between 5 and 6 a.m., when the on-duty officer left the station to feed the police horses. In granting defendant's motion for summary judgment, the district court held that Williams failed to demonstrate any infringement of constitutional rights sufficient to state a claim under the civil rights statute. The court reasoned that the officer's failure to follow the 30-minute cell check requirement was negligence at best and did not demonstrate a "total indifference to [detainee's] safety." (639 F. Supp. at 384.) The court further reasoned that even if it was police department custom to regularly miss the 5:30 a.m. check, "plaintiff has failed to show how that hour-long gap is anything more than negligence. A brief departure from the jail regulations does not automatically impinge upon prisoners' constitutional rights." 639 F. Supp. at 384.

■ Applying *Pedrick* to the case at bar, the evidence when viewed most favorably to plaintiff, overwhelmingly favored the defendant, and the trial court was correct in entering judgment notwithstanding the verdict. There was no evidence that the defendant had any knowledge of or any reason to suspect suicidal tendencies by David. Although the evidence at trial established that David was violent, intoxicated, and disorderly, defendant's knowledge that he was behaving violently was no reason to know or suspect that his violence might become self-directed. *State Bank v. Camic* (7th Cir. 1983), 712 F.2d 1140.

The officers' failure to have David medically examined, despite his obvious intoxication, and the officers' violation of the established procedures to check the cells every half hour, did not constitute a deliberate disregard for David's well being or safety. *Williams v. City of Lancaster* (E.D. Pa. 1986), 639 F. Supp. 377.

■ Plaintiff additionally argues that defendant should have installed a valid surveillance system for observation in the jail cells to prevent a suicide attempt. We disagree. The City of Markham police department was under no such duty. *Williams v. City of Lancaster* (E.D. Pa. 1986), 639 F. Supp. 377.

We affirm the trial court's judgment notwithstanding the verdict.

Affirmed.

MURRAY, P.J., and COCCIA, J., concur.