Serbian National Defense Council of America, an Illinois Corporation, Plaintiff-Appellee, v. Marko Borkovich, Defendant-Appellant.

Gen. No. 52,507.

First District, First Division.

January 13, 1969.

Herbert F. Stride, of Chicago (Elliot Heidelberger, of counsel), for appellant.

William J. Kiley, of Chicago for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The plaintiff, the Serbian National Defense Council of America, initiated the present action in order to re-

cover monies loaned to the defendant, Marko Borkovich. The loan allegedly was evidenced by a written contract. The cause was tried before a jury and at the close of all of the evidence the court directed a verdict in favor of the plaintiff. Judgment was entered against the defendant in the amount of $3,466.87.

The defendant contends, on appeal, that there was sufficient evidence in the record to present a question of fact to be determined by a jury. He asks this court to reverse the trial court and remand the case for a new trial.

On May 1, 1961, the plaintiff filed a complaint in which it alleged that the plaintiff and the defendant entered into a written contract on April 26, 1952, wherein the plaintiff loaned the defendant $3,000 for a down payment on the purchase price of a home. The plaintiff further alleged that the defendant failed to pay the balance due under the loan. The plaintiff acknowledged that the written contract entered into by the parties was lost, but maintained that the defendant made payments of $850 on the loan, leaving a balance due of $2,150, plus 5% interest.

The defendant filed an answer in which he denied that he entered into a written contract with the plaintiff, that the plaintiff loaned him $3,000, or that he, the defendant, made payments of $850 on the loan.

We summarize the evidence. Plaintiff organization aided refugees coming to the United States during and after World War II. The defendant came to the United States in 1951, and with assistance from plaintiff the defendant moved his family from New York to Chicago. Mr. Peyovich, the secretary of the plaintiff organization in the early 1950's, told the central committee of the organization that the defendant had a wife and several children and could not find a reasonable place to live. In order to remedy this situation Nada Rashovich, plaintiff's bookkeeper, showed the defendant a house at 3840 North Marshfield Avenue in Chicago.

The defendant, Marko Borkovich, testified that Mrs. Rashovich told him that the house at 3840 North Marshfield would cost $13,000 and that he would be required to make a $3,000 down payment and have a $10,000 mortgage. He bought the house and moved in on July 6, 1952. The defendant said that he made monthly payments of $200 to Mrs. Rashovich for thirty-one months beginning with April 26, 1952, but never received a receipt from her. He made no further payments to the plaintiff thereafter. He denied that he ever entered into a written contract with plaintiff. He testified further that in September 1954, Mrs. Rashovich took him to the North Avenue Federal Savings and Loan Association and told him he could have his own loan repayment book since he had paid the $3,000 down payment plus $2,000 on the mortgage. A new account was opened for him at that savings and loan association in the amount of $10,000 and he executed a mortgage to them. On October 12, 1954, a warranty deed for the house was delivered by Ilya Tarailo, plaintiff's treasurer, to the defendant. The deed bore revenue stamps in the amount of $16.50.

The defendant further testified that in February 1955, Mrs. Rashovich came to his house and told him for the first time that the house cost $15,000. He said she showed him a letter addressed to her on the stationery of the Serbian Council which acknowledged recipt of $200 from the defendant on account of the $3,000 down payment made by the Council. The letter further recited that when the defendant had paid the balance of the $3,000 loan the Council would convey title of the house to him.[1] On the bottom of the undated letter appeared a notation made by Mrs. Rashovich stating that the cost of the house was $15,000 subject to the down payment of $3,000,

[1] It should be noted that the Serbian National Defense Council had transferred title to the defendant four months before he had first been shown the letter.

a junior mortgage of $2,000, and a $1,000 mortgage due to the Avondale Savings and Loan Association.

In 1958, the defendant completed the repayment of the loan of $10,000 from the North Avenue Federal Savings and Loan Association whereupon North Avenue Federal mailed him the cancelled mortgage and various other papers. The defendant further stated that in 1960, Mr. Louis Peyovich, the plaintiff organization's secretary, visited him at his home in an effort to collect money from him. Subsequently, on October 7, 1960, the defendant received a letter from the Council demanding the balance of the $3,000. If $2,150 was not paid the letter read, the Council would be forced to take the matter to court. In answer to an inquiry from the trial judge, the defendant's counsel informed the court that although the defendant thought the purchase price of the house was $13,000, the defendant paid $15,000 for it. The defendant denied that he ever signed an agreement with the plaintiff or that he paid $850 as alleged on the alleged $3,000 loan.

Dr. Wroush Seffer, National President of the Serbian National Defense Council, testified that Mr. Peyovich asked the Council's central committee to loan the defendant $3,000 to use as a down payment on a house he wanted to buy. A check for $3,000 dated April 26, 1952, and made payable to Ilya Tarailo, the Council's treasurer, was advanced as earnest money for the defendant. Dr. Seffer identified an exhibit, dated June 11, 1952, on the stationery of C. B. Zeller, realtor, as the closing statement for the purchase of property for the defendant. The statement shows the buyer to be Ilya Tarailo and shows the sellers to be Walter and Margaret King, the owners and residents of the premises at the time. He identified another exhibit as being an unsigned carbon copy of an agreement between the Council and the defendant. Dr. Seffer stated that he could not find the original. The witness said that the defendant signed the written agreement which stated in part that the Council loaned the defendant

$3,000 and "Mr. Borkovich is to repay the sum of $3,000.-00 Dollars to the Serbian National Defense Council of America, when title to the property at 3840 North Marshfield is in the name of Mr. Borkovich." Dr. Seffer further testified that he had inspected the books and records of the Council before the letter of October 7, 1960, was sent to the defendant. He said that his inspection revealed that the defendant had paid $850 toward the loan, but that the balance had not been paid, nor was it paid subsequent to the receipt of the letter. The witness said that he had itemized the payments made by the defendant and attached the figures to the letter of October 7th.

Three of the central figures in the controversy surrounding the disputed transaction did not testify at the trial. Mr. Ilya Tarailo, the Council's treasurer, died before the case came to trial. Mr. Peyovich, the secretary of the plaintiff organization, and Mrs. Rashovich, the Council's bookkeeper, were also unavailable and did not testify. Furthermore, neither the records of the Council, nor evidence of defendant's alleged payment of $850, were produced.

■■ It is elementary that a trial judge may not substitute his judgment for that of a jury as to the weight and credibility of conflicting evidence. The latest rule adopted by our Supreme Court on this subject states that a verdict should be directed where the evidence, when considered in its aspect most favorable to the opposite party so overwhelmingly favors the movant that no contrary verdict could be permitted to stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504.

Viewing the evidence most favorably for the defendant, we conclude that the issues between the parties are in essence ones of credibility. There is conflicting and irreconcilable testimony in the record. We think the evidence in this record, together with the legitimate inferences

that may be drawn tend to establish a question of fact for the jury to decide. The court, therefore, erred in directing a verdict for the plaintiff.

The record clearly establishes that the plaintiff was careless in its operation of loaning money. It is uncontroverted that the defendant did not receive receipts when he made his monthly payments to the plaintiff. There is a conflict as to whether any agreement was signed by the defendant to repay the down payment of $3,000 advanced by the plaintiff. No junior mortgage or note was signed by the defendant to secure this loan. The purported agreement relied on by the plaintiff recites that "Mr. Borkovich is to repay the sum of $3,000.00 to the Serbian National Defense Council of America, *when title to the property at 3840 N. Marshfield is in the name of Mr. Borkovich.*" (Emphasis ours.) It is plaintiff's version that the balance of the loan was unpaid, yet the plaintiff organization apparently assisted the defendant to obtain title to the property in October 1954, subject only to a first mortgage held by the savings and loan association in the amount of $10,000. Prior to this event, plaintiff held title to the property in the name of one of its officers.

█ It was in February of 1955 that Mrs. Rashovich informed the defendant that he still owed the plaintiff the balance of the loan. It was in 1960 that the Council served written notice upon the defendant that he owed $2,150 on the loan. This notice came long after the defendant had paid his first mortgage. The defendant testified that he had paid the full amount of the purchase price and denied that he owed any money to the Council. The jury should have been allowed to decide the questions of fact raised by the conflicting testimony.

Under the facts and circumstances the plaintiff was not entitled to have the issues withdrawn from the jury. The

judgment of the trial court is, therefore, reversed and the cause remanded for a new trial.

Reversed and remanded.

ADESKO, P. J. and MURPHY, J., concur.