WAYNE HODGES, Plaintiff-Appellant, *v.* JEWEL COMPANIES, Defendant-Appellee.

Second District   No. 78-348

Opinion filed May 30, 1979.—Rehearing denied July 2, 1979.

Donald C. Dowling, of Dowling & Safanda, of St. Charles, for appellant.

James S. Mills and Gates W. Clancy, both of Geneva, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff, Wayne Hodges, appeals from a directed verdict for the defendant arising out of an action for personal injuries which the plaintiff sustained in a fall on the defendant's premises.

Wayne Hodges is a victim of polio, who has to wear a leg brace on his left leg and can only walk with the aid of crutches. He weighs about 230 pounds. The plaintiff went to the offices of American Family Insurance Company in Elgin, which offices are in a building owned by the defendant, for the purpose of buying automobile insurance. He drove his automobile to the American Family Insurance Company parking lot, got out of his car and proceeded along the sidewalk to the entranceway of the insurance· company. The testimony at trial established that at the entranceway or threshold of the building there is a step or raised portion comprised of one course of brick, being about 2¼ inches high, immediately under the door itself, so that the level is approximately 2¼ inches lower on the outside of the door than the level encountered when opening the door to step inside.

The plaintiff testified that he saw the small step or difference in levels between the outside and the inside at the threshold. He attempted to negotiate this by maneuvering his right crutch into position to hold the door while stepping forward into the building with his left leg. However, as he attempted to move forward, his right toe caught the raised portion of the threshold causing him to fall forward onto his left knee, severely injuring it. The plaintiff was taken to a hospital in an ambulance where it was found that he had a fracture of the left knee. He was in bed for a month, then returned to the hospital for further treatment and at the time of the trial was still suffering pain and discomfort as well as greatly lessened mobility, allegedly due to the injury sustained in the fall. The complaint alleges permanent disablement. There appears to be no question that the plaintiff was a business invitee at the time of the injury.

At the trial the plaintiff called an expert witness, John Allen Marshall, an architect, who testified that in architectural design it is considered poor practice to "put a step in the door of a commercial building," and that the threshold of the building in this case did not comply with the standards of his profession. He also testified that the door handle was not at the

standard height for a commercial door, being 50¼ inches from the concrete threshold on the outside whereas the normal reach from the threshold to the handle was about 43 or 44 inches. It was his opinion that while the extra height did not actually increase the difficulty of opening the door, it was a distracting element which added to the hazard imposed by the 2¼-inch difference in level at the threshold. It was Marshall's opinion, as an architect, that the small step or shelf at the threshold, together with the unusual height of the door pull, was a combination which did not conform to proper architectural standards for an entranceway.

■■ This evidence was not countered by any other expert evidence and we think it may properly be considered as constituting *some* evidence of negligence on the defendant's part in the duty owed to the plaintiff as a business invitee. While it may be that the small rise at the entrance would not have bothered an able-bodied person, this was a business office soliciting the business of the public in general and the defendant must be taken to have contemplated the entrance of handicapped persons through its doorway, as well as those physically fit. To the extent that the plaintiff's expert's evidence indicated a difficulty engendered by improper construction, we think there was a sufficient basis for jury deliberations on the question of negligence.

Actually, the defendant does not in its appeal brief contend otherwise—its brief is bottomed solely on the defense of contributory negligence and not on the insufficiency of the plaintiff's case to raise a jury question on the issue of the defendant's negligence. The trial judge did not issue a memorandum opinion in granting the motion for a directed verdict but we assume from the defendant's brief, which as we say rests entirely on the question of contributory negligence, that this was the basis on which the motion was granted.

● 2 Ordinarily the issue of contributory negligence is a jury question, and using the familiar *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494) for the directing of verdicts, a verdict will be directed based on contributory negligence only "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d 494, 510.

The motion for the directed verdict was granted at the close of the plaintiff's evidence. As we have said we think it far from clear that the facts presented by the plaintiff raised no question for the jury as to the issue of defendant's negligence. However, if, applying the *Pedrick* standard, the plaintiff was guilty of contributory negligence as a matter of law, then the motion for a directed verdict was proper on that basis. We, therefore, must consider the evidence on which, judging from its brief,

the defendant relies as a basis for the defense of contributory negligence.

Following the plaintiff's direct testimony as to his fall at the threshold of the defendant's building, defense counsel cross-examined the plaintiff as follows:

"Q. * * * Did you observe this cement or bridge railing or shelve [*sic*] here that goes under the door?

A. I'm sure I did, but I didn't realize it was that high.

Q. You saw it there before you started in; isn't that right?

A. Yes, I saw it.

* * *

Q. * * * Now, at that time did this threshold seem high to you as you looked at it when you picked up your left foot to go in there?

A. No, because I started in I looked down at it and it was, like I said, it looked like I could walk over it. It didn't look like it was too high.

* * *

Q. It wasn't dark. In fact, there was plenty of light for you to see in there; isn't that true?

A. Yes.

* * *

Q. * * * You were inside the office area when you fell; isn't that true?

A. No. I wasn't all the way. I was just beginning to step in when I hung my right toe on the threshold."

We believe these excerpts from the plaintiff's cross-examination which are mentioned in the defendant's brief, fairly summarize the testimony relied on by the defendant as constituting admissions indicating contributory negligence. However, we do not so construe the plaintiff's testimony when viewed in the context of his complete testimony as to how he approached the door, how he maneuvered his body and his crutches and the effort he was required to expend in attempting to pass safely through the door in question. On direct examination the plaintiff was asked by counsel to tell "step by step what you did and what you observed once you reached the point marked X [apparently the entranceway] on Plaintiff's Exhibit No. 1 in evidence." In reply, plaintiff said:

"A. Okay. After I got in front of the door I stepped slightly to the left of the door so I could clear the door when I opened it to the right. After I got it opened, I put my right crutch in front of the door and I made about one or two steps to the inside of the door and stepped into the building with my left leg. As I stepped into the building I started to move forward into the building and I hung

my right toe in this step that was along the bottom and I fell forward onto my knee and it hurt—it really hurt bad."

As we have said, the defendant's building was a business office rented to an insurance company and open to the general public for the transaction of insurance business. It could not safely be assumed by the defendant that every member of the public seeking entrance to the defendant's building for insurance purposes would be in such good physical condition that the raised sill at the threshold of the building would not present any difficulty to him. It is apparent from the plaintiff's description of his tortuous approach to entering the doorway of defendant's building that he experienced great difficulty indeed. Nor do we see in his answers on cross-examination any admission constituting negligence on his part. The fact that the plaintiff saw the small sill—which he had never seen before since it was his first visit to the premises—and was unable, because of the weakness of his limbs and the impediment of the crutch to successfully coordinate the opening of the door, the shifting of his weight on his crutches, the entrance of one leg through the doorway, and the lifting of the other leg across the raised sill, is not, in our opinion, an indication of negligence. In our opinion, it would be callous, indeed, to say that the plaintiff was contributorily negligent as a matter of law because he miscalculated the effort required to lift his right foot over the raised threshold in the process of completing the maneuvers necessary for him to open and pass through the door.

We refrain from making any judgment as to the proximate cause of the plaintiff's injury, since that is the ultimate question to be decided in this case, but we think it is clear that the testimony adduced at this trial does not so clearly indicate contributory negligence on the part of the plaintiff as to preclude the jury from considering the question. As noted above, the entranceway to public buildings must be considered from the standpoint of that minority of the public which is mobile but handicapped as well as from the standpoint of those without any physical handicaps. Judged by this criteria we do not think the *Pedrick* standard mandates a directed verdict in this case on either the issue of the defendant's negligence or the question of the plaintiff's contributory negligence.

The judgment of the circuit court of Kane County is therefore reversed and the cause is remanded for a new trial.

Reversed and remanded.

NASH and LINDBERG, JJ., concur.