GARY DEHMER, Plaintiff-Appellant, *v.* JOSEPH MARTORANO, Defendant-Appellee.

(No. 61031;

First District (5th Division)—May 9, 1975.

Merwin Auslander, of Chicago, for appellant.

Jerome M. Brooks and Edward A. Seyk, both of Chicago (Edward A. Seyk, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff brought this action to recover for personal injuries allegedly sustained on the property of defendant, his landlord. At the close of all evidence the trial court ordered a directed verdict in favor of defendant, and judgment was entered on this order. On appeal plaintiff contends that (1) he presented a prima facie case of negligence on the part of defendant, and (2) his conduct was not contributorially negligent as a matter of law, and therefore the issue of contributory negligence should have been submitted to the jury.

At trial plaintiff testified on his own behalf that from mid-summer of 1967 until September 1969 he resided in an apartment located at 8207 Kilpatrick in Skokie. In February 1969 he underwent back surgery and convalesced at home during the spring of that year. He was forced to wear a cast on his back until May. On May 31, 1969, approximately 1 week after his cast was removed, he suffered the fall which is the basis of his claim against defendant. That morning between 9 and 9:30 he decided to take out the garbage. He walked down the back stairs of the apartment building carrying a grocery bag full of trash in his left hand and a cane in his right hand. His dog followed him down the stairs. There had been a heavy rain the night before, and a very light rain continued to fall. A cement walkway led directly from the stairs to the area where the garbage cans were located. He fell on the walkway about 4 or 5 feet from the stairs. After he fell, he surmised that he had tripped over an extension of the building's downspout that ran across the sidewalk. He was in great pain. His brother assisted him back to his apartment.

Prior to his fall he still experienced some discomfort resulting from the surgery. After the fall he felt intense pain from the middle of his back down into his legs. He first saw his physician, Dr. Herbert Loseff, 1 week after the fall. Dr. Loseff prescribed home treatment and medication. He had "been scheduled to see Dr. Loseff" even before the May 31 accident "to receive post-operative care." He continues to suffer back pain centered

·in the area around his waist, particularly after he sits for long periods of time.

On cross-examination plaintiff testified that he had lived in the building for approximately 2 years prior to the accident. He had previously seen the drainpipe extension placed across the sidewalk when it had rained. When he was on the stairway there was nothing to obstruct his view of the drainpipe. At the time he fell he turned to stop his dog which was running out to go to his brother.

Plaintiff further testified on cross-examination that he had suffered a back injury in California in 1967. A hearing regarding that injury was held before the Workmen's Compensation Appeal Board of California on June 8, 1970. He admitted that the complaints regarding back pain to which he testified before the Board were the same to which he testified in the instant case. He so testified before the Board under instructions of his attorney so as not to jeopardize that case. The California claim was "settled out of court." During the spring and summer of 1969, both before and after his fall, he rode his bicycle.

Plaintiff called Darryl Gene Wagner, his brother, to testify on his behalf. On the morning of May 31, 1969, at approximately 9 o'clock, he drove to plaintiff's apartment on Kilpatrick Avenue in Skokie. He pulled up in front of the building and honked his horn. Plaintiff motioned from the window that he should drive around to the back of the building. He pulled into the alley and saw plaintiff walking down the back stairs. He then proceeded to park his car. He heard plaintiff yell, jumped out of his car and ran to his assistance. Plaintiff was lying on his hands and knees on the ground. He was approximately 12 to 14 feet from the stairs. He did not see plaintiff fall. Plaintiff's back was toward the stairs. After some effort, plaintiff got to his feet. Wagner then assisted him up the back stairs and into the apartment. A very light rain was falling; it was not heavy enough to require the use of windshield wipers.

Dr. Herbert Loseff testified on behalf of plaintiff that he is an orthopedic surgeon. He twice performed spinal fusion surgery on plaintiff, once in 1968 and again on March 20, 1969. He did not examine plaintiff between May 27, 1969, and July 1, 1969. It was not until an examination on August 27, 1969, that plaintiff reported that he had fallen. X-rays taken in October 1970 revealed that complete fusion had not occurred. This failure could have been the product of trauma caused by falling over a ·drainpipe. Such incomplete fusion could cause lower back pain. On cross-examination Dr. Loseff testified that on July 1, 1969, it appeared that plaintiff was making good progress and could resume working whenever he desired. X-rays taken in September 1969 also revealed that plaintiff was steadily recovering from surgery.

Pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60) plaintiff called defendant. Joseph Martorano, as an adverse witness. He testified that he is the owner of the four-flat building at 8207 North Kilpatrick in which plaintiff was a tenant in May 1969. He had been the owner of the building for 15 years. Throughout the period of his ownership it was his practice to attach a 6-foot-long horizontal extension to the drainpipe when a heavy rain was predicted so that the basement would not flood. Sometimes the tenants would attach the drainpipe extension. He never saw plaintiff attach it.

Defendant was then called as a witness on his own behalf. He testified that during his ownership of the building no one had ever fallen over the drainpipe.

Mary Conrad testified on behalf of defendant that she was a tenant at 8207 Kilpatrick when plaintiff resided there. She knew that in the spring of 1969 plaintiff had a back operation, following which he walked with the aid of crutches and later a cane. About a month after he left the hospital he began riding his bicycle and continued to do so until he moved out of the building in September 1969. His back condition seemed to be improving throughout this period. He never told her that he fell over the drainpipe. She knew that the drainpipe extension was attached whenever there was a heavy rain. With defendant and defendant's attorney she measured the distance of the extension from the foot of the stairs and found it to be 11 feet, 4 inches.

Doris Roman, a former tenant of the building, gave testimony substantially similar to that of Conrad.

Defendant introduced into evidence the United States Department of Commerce Weather Bureau schedule of Chicago area climatological data for May 1969. It indicates that no rain fell in the area on May 30 or during the early morning hours of May 31.

OPINION

■■ In *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, the supreme court held that:

> "* * * verdicts ought to be directed * * * only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Plaintiff contends that under this standard the trial judge erred in ordering a directed verdict in favor of defendant. He argues that he introduced sufficient evidence on the issues of defendant's negligence and the absence of his contributory negligence to have the case submitted to the jury. Defendant responds that notwithstanding the viability or nonviabil-

ity of plaintiff's claims on the questions of negligence and contributory negligence, his case was fatally defective in its failure to introduce sufficient evidence on the issue of damages.

■■ Proof of damages is essential for recovery in a suit for negligence. (*Jeffrey v. Chicago Transit Authority*, 37 Ill.App.2d 327, 185 N.E.2d 384.) In the instant case the evidence on this fundamental issue, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favors defendant that no verdict for plaintiff based on this evidence could ever stand.

■■ The record reveals that plaintiff testified in a California workman's compensation case that the injuries of which he here complains were, in fact, caused by an accident in that state. Plaintiff, despite his assertion that his fall left him in great pain, did not visit Dr. Loseff, his physician, until 1 month after the accident, and this visit was merely for routine postoperative treatment. Indeed, he did not tell Dr. Loseff he had fallen until August 27, almost 3 months after the date of the alleged accident. Dr. Loseff testified that during the summer of 1969 he noted no interruption in the progress plaintiff was making in his recovery from back surgery. By July 1, 1969, plaintiff was capable of resuming employment; X-rays taken in September of that year showed progressive healing. Plaintiff admits and his neighbors confirm that he engaged in such strenuous activities as bicycling throughout the summer of 1969. Plaintiff at no time told his fellow tenants that he had fallen in the backyard and reinjured himself. He did not notify defendant of his fall until 2 months after the hearing in the California action and 14 months after the date of the alleged fall. He failed to produce medical bills or an accounting of expenses to substantiate his claim. Clearly, on the basis of this record, the trial judge did not err in directing a verdict in favor of defendant.[*]

Accordingly the judgment entered below is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.

---

[*] Other of plaintiff's allegations were conclusively rebutted at trial. For example, it was alleged that the Chicago area was swept by heavy rains during the night preceding May 31, 1969, and a light drizzle continued to fall on the morning of May 31. Weather Bureau records for Midway Airport, however, reveal that no rain fell in Chicago from 5:13 A.M. on May 27 until 11:25 A.M. on May 31. This pattern of precipitation was apparently uniform throughout the metropolitan area.