Olga Perec, Administrator of the Estate of Karlo Bytner, Deceased, and Helen Bytner, Deceased, and Michael Perec, a Minor, by Olga Perec, Mother and Next Friend, Plaintiffs-Appellants, v. Frederick G. Little, Defendant-Appellee.

Gen. No. 68–74.

Second District.

February 25, 1969.

Kamin, Stanley, Burtker and Steinberg, of Chicago, for appellants.

Corrigan, Mackay, Quetsch and O'Reilly, of Wheaton, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiffs brought this action seeking, in Count I of the complaint, damages for the alleged wrongful deaths of Karlo Bytner and Helen Bytner; and in Count II, damages for personal injuries allegedly sustained by Michael Perec, a minor, the son of plaintiff, Olga Perec.

The trial court directed a verdict for the defendant at the close of the plaintiffs' case and stated that the evidence failed to show negligence on the part of the defendant; and further, as to Count II, that the evidence failed to show any damages sustained by the minor, Michael Perec.

The evidence, on which the trial court directed verdicts for the defendant, indicated that the accident took place on August 17, 1965, at about 7:30 p. m. Karlo Bytner, accompanied by his wife, Helen, and his grandson, Michael Perec, was driving his Falcon car in an easterly direction on Route 64, in Du Page County.

Route 64, at the place in question, was a four-lane highway, with adjoining shoulders on each side. Bytner had intended to turn south, off Route 64, onto Prince Crossing Road, to take his grandson to the football practice field. He missed this turn and proceeded easterly on Route 64, approximately one-half to three-quarters of a mile, to where Fair Oaks Road formed a "T" intersection with Route 64 from the north. At this point, he was making a left turn when his car was struck by the defendant's car.

The testimony of Michael was the most beneficial evidence offered on behalf of the plaintiffs. When viewed in

its aspect most favorable to the plaintiffs, it indicated that after missing the turn at Prince Crossing Road, grandfather Bytner proceeded on eastward in the outside of the two eastbound lanes of traffic of Route 64; that as he approached the crest of a hill at the Fair Oaks intersection, he put on his left turn signal and began to drive the car into the inner of the eastbound lanes of traffic; that he traveled in the inner traffic lane for a little over 100 feet, stopped at the Fair Oaks intersection for three or four seconds and waited for a vehicle in the westbound lanes to pass so that he could turn left; and that he then proceeded to turn. Michael looked back at that time and saw some cars behind him, and this was the last thing he remembered.

The plaintiffs next produced the evidence deposition of Mark Lohse, who at the time of the accident was riding in a car with his father. Lohse stated that his car was traveling in the outside eastbound lane, immediately behind four vehicles, the first of which was driven by Bytner, and the third by the defendant. He noticed the Bytner car, which was traveling in the outside traffic lane. The three other intervening cars were in the inside eastbound lane—that nearest to the center line of Route 64. He also stated that the Bytner car made a left-hand turn from the outside lane in a northerly direction and towards Fair Oaks Road; that the first and third cars behind the Bytner car "dodged" it by turning into the outside lane; that the defendant's car turned left, towards the westbound lanes of traffic of Route 64 in an attempt to avoid a collision; and that the Bytner car and the defendant's car collided in the middle of the "T" intersection of Route 64 and Fair Oaks Road, and partially in the westbound lanes of traffic of Route 64.

Lohse described the incident in further detail, and stated that the car driven by Bytner was traveling approximately 35 m. p. h., and slowed down to about 20

310

m. p. h. as it approached Fair Oaks Road, and that then one or two of the right wheels were off the road on the south shoulder of Route 64. He further stated that Bytner attempted a left-hand turn from this position; that he gave no signal whatsoever; and that the defendant's vehicle was then about 175 feet behind Bytner's and was traveling approximately 65 m. p. h. As Bytner made the turn, the defendant turned his car across and into the westbound traffic lanes of Route 64 in an attempt to avoid the Falcon. At this time, the defendant's car was slowing down and its tires were squealing. Lohse further said that the two outside lanes of traffic near defendant's car were then occupied by the cars that had been immediately preceding and following the defendant's car.

The defendant testified, under section 60 of the Civil Practice Act, that prior to the accident he had been to Beloit, Wisconsin, on business; drank two beers there and left Beloit at about 6:00 p. m.

He further testified that as he approached the crest of the hill just prior to reaching Fair Oaks Road, he was traveling approximately 60 m. p. h.; and that the speed limit at this point was 65 m. p. h. He knew that other vehicles were behind him and to his right. When he first noticed the Bytner Falcon, it appeared to him that it was going to make a right turn; it was slowing down, and its right front wheel was off on the shoulder, beyond the outside eastbound traffic lane. At the time he saw this, he "hit" his brakes to flash his lights to signal to the cars behind him that there was cause for concern ahead. He testified that he continued driving in the inside lane, and slowed down to approximately 50 m. p. h. as the Bytner car continued to edge to the right.

It was at this time that the defendant flashed his lights, and about the time the Falcon made a wide left turn and proceeded in front of him. Neither the Bytner car nor its driver had given any turn signal or indication

311

of any type. When the defendant saw the Falcon "swoop over" to the left, he hit his brakes and turned to the left as sharply as he could. He stated that there was no traffic in the westbound lanes and that was the only direction he could go. The point of impact was in the inside, west lane of traffic of Route 64. He stated that at the moment of impact his speed was reduced to approximately 30 m. p. h.; and that after the police officers arrived, he overheard Michael Perec tell the police officers that he told his grandfather not to make a "U" turn at that point in the road.

In directing the verdicts against the plaintiffs, the trial court stated that if it were to consider only the testimony of Michael Perec, there would be some evidence to substantiate a case of negligence against the defendant; however, that Michael's testimony was neither clear nor convincing, and was somewhat garbled; and that some of his statements were contradictory.

We have set forth herein only that part of Michael's testimony which was most favorable to the plaintiffs' cause. But, as the trial court noted, his testimony did not find any support in any of the other evidence before the court.

In testing whether the verdicts should be directed for the defendant, it was the duty of the trial court to examine all of the evidence, in its aspect most favorable to the plaintiffs, and if it so overwhelmingly favored the defendant that no contrary verdict based on that evidence could ever stand, then it was proper to direct verdicts for the defendant. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967).

Since Pedrick, the determination of whether or not a verdict should be directed is not made to depend on whether a search of the record reveals any evidence which might reasonably favor the nonmoving party. The trial court now may view, and weigh, all of the evidence, and even though there be evidence tending to substantiate

the nonmoving party's case, if that evidence is so overwhelmingly contradicted by the remaining evidence that a verdict based thereon could never stand, then the court may direct a verdict for the movant. Pedrick v. Peoria & Eastern R. Co., supra, 511; Dimitrijevic v. Chicago Wesley Memorial Hospital, 92 Ill App2d 251, 263, 264, 236 NE2d 309 (1968).

Viewed in relation to all of the other evidence, particularly that of plaintiffs' own disinterested witness, Lohse, the testimony of Michael Perec is of dubious probative value. He testified that his grandfather had given a turn signal, had driven into the inside eastbound traffic lane and proceeded there for over a 100 feet before stopping, at which time he waited for several seconds for a westbound vehicle to pass. Lohse, however, substantiated defendant's version: that Bytner's car was in the outside traffic lane, even partially on the shoulder, and from this point proceeded to make a turn to the left, across the lanes of traffic, without a signal or warning. If we view the evidence in its aspect most favorable to the plaintiffs, we accept that Bytner was attempting to turn onto Fair Oaks Road rather than to make a "U" turn. This does not, however, alter the inescapable conclusion that the defendant was not negligent and that the plaintiffs' intestate, Bytner, was guilty of contributory negligence.

██ We believe that the testimony of Lohse, taken with that of the defendant, under section 60 of the Civil Practice Act, renders Michael Perec's version of the collision inherently improbable, and that the trial court properly directed a verdict for the defendant.

The plaintiffs further contend that the trial court erred in refusing to dismiss Count II of the complaint upon the plaintiff's motion. The defendant received notice that the plaintiffs would seek to dismiss Count II of the complaint, which sought damages for injuries to Michael Perec, on the day prior to trial. The purpose of the mo-

tion was to prevent the defendant from testifying under section 2 of the Evidence Act (Ill Rev Stats 1967, c 51, par 2). The motion was heard and denied immediately prior to the commencement of the trial. The defendant contends that the trial court could properly exercise its discretion by denying the motion for the reasons that proper notice of the motion was not given and that the plaintiff did not agree to the payment of costs.

Section 52 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 52), provides for voluntary dismissal of a lawsuit prior to trial upon the conditions that: (a) notice be given, and (b) plaintiff pay costs. Section 49 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 49), provides for notice of motions according to rules. The local rules of the Eighteenth Judicial Circuit provide for four day's notice of motions, except where such notice requirement is waived by stipulation.

The plaintiffs' eleventh-hour motion would have had a substantial effect on the defendant's trial procedures and strategy. The presence of Count II of the complaint, and no prior attempt to obtain separate trials, presumably suggested to the defendant's counsel that his client would be permitted to testify at the trial.

We can only speculate that counsel's procedural plans and strategy in connection with the trial would have been altered considerably if his client were to be unavailable for testimony.

Under these circumstances, we can see a substantial prejudice to the defendant if the plaintiffs had been permitted, at the eleventh-hour, to dismiss Count II of the complaint. The case had been on file for a long period of time. The plaintiffs had ample opportunity to determine the procedural method of their choice and alter their trial strategy within sufficient time before the trial so as not to prejudice the defendant. In view of this, we are of the opinion that the trial court properly exercised its discretion in denying the plaintiffs' motion, which was

made without requisite notice and without payment of costs as required by the Civil Practice Act and the local rule.

For the reasons stated herein, the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.