PAMELA A. ROEDL, Plaintiff-Appellant, *v.* ROBERT H. LANE, Defendant-Appellee.

Third District    No. 75-301

Opinion filed September 29, 1976.

Elmo E. Koos, of Peoria, for appellant.

Heyl, Royster, Voelker & Allen, of Peoria (James B. Lewis, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff brought this action to recover damages for personal injuries sustained when she was struck by defendant's pickup truck while crossing

a road. At the close of all the evidence, the trial court granted defendant's motion for a directed verdict, and plaintiff appeals.

Defendant, called by plaintiff under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60), testified that the accident occurred at approximately 4:30 p.m. on November 18, 1971, on Meadows Road, a two-lane highway which runs in an east-west direction. The weather conditions were dark and misting, the road was wet, and the headlights and wipers on his pickup truck were on. He was traveling on Meadows Road in a westerly direction at a speed of approximately 30 m.p.h. and, as he approached Hill Road, which intersects Meadows Road from the south, he observed a bus in the opposite lane stopped or stopping one-half block ahead. When he was five feet in front of the bus, he saw plaintiff emerge from the rear of the bus and walk into his lane. Defendant applied his brakes, started to slide, and struck plaintiff with the right front fender of his vehicle. Plaintiff was almost across the street when she was struck.

Plaintiff testified that when the bus stopped, she exited at the back and walked around the rear of the bus. The bus had stopped on the highway so that it still occupied the eastbound lane. Plaintiff paused at the left rear of the bus, looked both ways, and saw headlights one-half block away to her right. She concluded that she could cross safely and hurried across, but was struck when she was about one foot from the other side.

Maxine Clarkson testified for defendant that she was sitting in a tavern near the location of the accident and ran out to assist plaintiff, who was lying on the street. Plaintiff told Mrs. Clarkson that she had lost her glasses and purse, and Mrs. Clarkson retrieved these items. Mrs. Clarkson asked plaintiff how the accident occurred, and plaintiff said, "It was my fault, I didn't see him." This witness then went to plaintiff's house with the purse.

Carroll Melton, an insurance investigator, testified that he talked to plaintiff at home on December 18, 1971, at which time plaintiff was wearing a leg cast. He conducted an interview, which was tape-recorded with plaintiff's knowledge and consent. This recording was played for the jury and contained several damaging admissions. Plaintiff was asked how the accident occurred and stated:

> "I got off the bus and this guy in back of us motioned me to go on, well, I thought he motioned me to go on, so I thought he looked so I dashed out and by the time I seen the truck he was only a foot away from me and I heard him squealing tires and all of a sudden I was on the ground."

When asked if she looked for traffic, plaintiff said, "Well no, not exactly," and "I guess I wasn't looking where I was going." Plaintiff also stated that she did not consider defendant responsible for the accident and that she did not think that defendant could have done anything to avoid striking her.

Robert Calhoun, the driver of the bus, testified that when he stopped the bus it still occupied the eastbound lane and was close to the center line. Plaintiff exited at the rear of the bus. As he prepared to pull away, he saw defendant's pickup truck in the westbound lane even with the front of the bus, and looking in the side mirror, observed plaintiff by the left rear of the bus. Plaintiff ran across the street, and defendant applied his brakes and appeared to be trying to avoid plaintiff. Calhoun could not see which direction plaintiff was looking.

The deposition of Ivan House was read to the jury, in which House testified that he was driving directly behind the bus. When the bus stopped, plaintiff exited and went behind the bus. The bus blocked House's view of defendant's vehicle until it was a few feet from plaintiff, but House estimated defendant's speed to be 35-40 m.p.h. House stated that he observed plaintiff from the time she walked to the back of the bus until she was struck. When plaintiff was standing behind the bus, she looked in House's direction, hesitated, and then hurried across. House stated that plaintiff did not look to her right, which was the direction from which defendant was coming.

Defendant, in addition to the testimony he gave when called by plaintiff, testified that the posted speed limit for that area was 40 m.p.h. He also testified that he visited plaintiff at the hospital on the day after the accident, and plaintiff stated that the accident was her fault.

In rebuttal, plaintiff testified that she was under sedation while at the hospital and had never worn a cast on her leg.

Connie Smith, testifying as a rebuttal witness for plaintiff, stated that she was acquainted with plaintiff and came upon the scene while plaintiff was lying on the pavement. She conversed briefly with plaintiff, and found her purse lying about four feet from plaintiff. She too said she took the purse to plaintiff's house, being driven there by a man named Richard Smith and a woman whom this witness did not know.

The trial court, in granting defendant's motion for a directed verdict, found that the evidence did not show defendant to be negligent in the operation of his vehicle and that the evidence showed plaintiff to be contributorily negligent.

■■ The test for determining whether a directed verdict is proper is whether all the evidence, viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In making this determination, the trial court may not substitute its judgment for that of the jury as to the credibility of witnesses nor may the court determine the preponderance of the evidence. (*Prange v. Wallenburg* (1st Dist. 1975), 27 Ill. App. 3d 618, 327 N.E.2d 450.) Thus, where the evidence discloses a substantial

factual question on either the issue of plaintiff's due care or defendant's negligence, or where the assessment of the credibility of the witnesses may be decisive, the court may not direct a verdict. (*Liberio v. Patton* (1st Dist. 1973), 9 Ill. App. 3d 955, 293 N.E.2d 415.) However, a directed verdict is proper where there is some evidence supporting the nonmovant which loses its significance when viewed in the context of all the evidence. (See *Belleville National Savings Bank v. General Motors Corp.* (5th Dist. 1974), 20 Ill. App. 3d 707, 313 N.E.2d 631.) In *People v. Rosochacki* (1969), 41 Ill. 2d 483, 490, 244 N.E.2d 136, 140, our supreme court stated:

> "Our *Pedrick* decision fully contemplates that trial courts are to decide when weak evidence has so faded in the strong light of all the proof that only one verdict is possible of rendition."

We believe that the dispositive issue is whether the evidence conclusively establishes plaintiff's contributory negligence.

Here, the testimony of plaintiff that she looked in both directions before crossing the road and saw headlights one-half block away is cited as some evidence that she was exercising due care for her safety. However, the testimony of Maxine Clarkson, defendant, and particularly the recording of plaintiff's interview with Melton contained many damaging admissions by plaintiff that she did not look in defendant's direction before crossing into the lane in front of defendant's vehicle.

■■ Admissions, while constituting substantive evidence, are matters affecting the weight of that party's testimony, for the jury's determination, and do not *per se* destroy the probative value of the trial testimony. (*Sabo v. T.M. Moore Feed & Grain Co.* (5th Dist. 1968), 97 Ill. App. 2d 7, 239 N.E.2d 459.) The jury may properly consider, among other things, the circumstances under which the admissions were made.

In contrast to plaintiff's testimony, defendant testified that when he was five feet in front of the bus, plaintiff emerged from behind the bus and entered his lane of traffic. Defendant's testimony was corroborated by the bus driver, who stated that plaintiff ran into defendant's lane when defendant was about even with the front of the bus. Ivan House, a disinterested witness, testified that plaintiff did not look to her right, in the direction from which defendant was traveling, but only looked in House's direction and hurried across the road. This testimony further corroborates defendant's version and is consistent with the admissions made by plaintiff.

■■ Based on the foregoing, we believe that all the evidence, when viewed most favorably to plaintiff, so overwhelmingly favors defendant that no contrary verdict based on this evidence could ever stand. When plaintiff's testimony is compared to the other testimony in the case as well as plaintiff's admissions, we find that plaintiff's testimony is so improbable as to be unworthy of belief and that plaintiff's contributory negligence has

been conclusively established. (See *Perec v. Little* (2d Dist. 1969), 106 Ill. App. 2d 308, 245 N.E.2d 306.) Accordingly, we hold that the trial court did not err in directing a verdict for defendant.

Defendant also contends that the recording of her conversation with Melton was improperly admitted.

■■ Recordings which are otherwise competent, material, and relevant are admissible if a proper foundation has been established. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249; Hunter, Trial Handbook for Illinois Lawyers, §50:7 (4th ed. 1972).) Here the trial court first heard the recording and ruled it admissible, subject to a proper foundation being made, and the trial transcript shows that a proper foundation was established prior to its being played for the jury. Therefore, we find no error in this regard.

Accordingly, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.