RALPH KOEHLER, Plaintiff-Appellant, *v.* WOLVERINE INSURANCE COMPANY, Defendant-Appellee.

Third District   No. 76-412

Opinion filed June 30, 1977.

Leo J. Schwamberger and Gary L. Gearhart, both of La Salle, for appellant.

T. Donald Henson, of Herbolsheimer, Lannon & Henson, of La Salle, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by plaintiff, Ralph Koehler, from a judgment entered by the Circuit Court of La Salle County on a directed verdict in favor of defendant, Wolverine Insurance Company. Plaintiff brought this action to recover damages for alleged fraudulent misrepresentation by reason of concealing certain medical insurance coverage from plaintiff. At the conclusion of plaintiff's case at a jury trial, the trial court granted defendant's motion for a directed verdict. On this appeal plaintiff argues that the trial court erred in entering a directed verdict for defendant.

From the record, it is noted that on February 8, 1973, plaintiff fell on a sidewalk in front of the American Legion Post in Mendota, Illinois, and suffered injuries necessitating his' hospitalization. Subsequently plaintiff brought an action in the Circuit Court of La Salle County (case No. 73-6-733L) seeking to recover damages from the American Legion Post and the city of Mendota for the injuries sustained in his fall. Defendant Wolverine had written an insurance policy on the American Legion Post building in Mendota. In September 1974 plaintiff's suit against the American Legion Post and the city of Mendota was settled for the total sum of $3,000, and a release of all claims was executed. (Payment of $2,500 was made to plaintiff by a settlement draft of Transamerica Insurance Group, defendant's parent company.)

Prior to December 23, 1974, plaintiff brought this cause against defendant Wolverine, praying for judgment against defendant in the sum of $500 actual damages and $50,000 exemplary damages, as a result of defendant's alleged concealment of $500 medical payments coverage in connection with the settlement in case No. 73-6-733L. After the filing by defendant of a motion to dismiss, which motion was denied by the trial court, a jury trial commenced on June 1, 1976. Plaintiff's case at trial consisted of testimony from four witnesses.

William Marmion, the first witness called by plaintiff, was an agent of defendant who had written an insurance policy on the Mendota American Legion Post building. Marmion testified that the insurance policy was in effect on the date of plaintiff's accident, and that the policy contained a medical pay provision. Marmion apparently visited plaintiff at the hospital on February 8, 1973, but there was no conversation as to coverage by insurance of the Mendota Legion Post. Marmion testified that on February 9, 1973, he completed an accident report detailing plaintiff's accident, specifying that plaintiff's accident occurred on the Mendota American Legion premises, and forwarded the report to defendant's claims office. Marmion testified that he did not recall speaking with plaintiff by telephone regarding the coverage under the American Legion Post insurance policy.

Plaintiff testified as to his accident and subsequent hospitalization. Plaintiff also indicated that during his hospitalization an adjuster from defendant visited him and took a statement detailing the accident. Plaintiff testified that while he was confined at the hospital he had a telephone conversation with Marmion, wherein he said:

> "Well, I asked him [Marmion] if he had any insurance on where I fell and he said no. That was the extent of the conversation."

According to plaintiff, only after the settlement of case No. 73-6-733L did plaintiff learn that there was a $500 medical pay provision included in the American Legion Post insurance policy. Plaintiff said he would not have settled that suit had he known of the medical pay provision of the policy.

Plaintiff next called Robert H. Oaks, an agent of defendant and an insurance adjuster for Transamerica Insurance Group. Oaks testified to visiting plaintiff at the hospital and preparing a report of plaintiff's accident. While Oaks was admittedly aware of the medical pay provision of the insurance policy, he testified that at no time was he asked or did he inform plaintiff or plaintiff's attorneys of the medical pay coverage.

The final witness called by plaintiff was Charles A. Kelly, claims manager for the defendant who became responsible for plaintiff's claim when the lawsuit was filed. Kelly testified that, while he was aware of the coverage included in the insurance policy on the American Legion Post, he was not asked and did not inform plaintiff personally of the provisions of the policy. Kelly testified that the settlement draft delivered to plaintiff apportioned the settlement as $2,000 to "BI" coverage and $500 to "MP" coverage, and that "BI" indicated bodily injury coverage and "MP" indicated medical payments coverage.

The trial court took judicial notice of the court file in the prior case. The complaint in that cause stated two counts, one against the city of Mendota and one against the American Legion Post. In its answer to the complaint,

the American Legion Post denied that plaintiff's accident occurred on property belonging to the American Legion Post. Written interrogatories served upon the American Legion Post by plaintiff in that action inquired as to the existence of liability insurance, but did not inquire as to the existence of medical payments coverage. While plaintiff did file a motion to produce documents in that action, such motion did not request production of any insurance policy in effect on the American Legion Post property.

■■ At the close of plaintiff's case, defendant moved for a directed verdict. The trial court granted defendant's motion, and directed the jury to return a verdict for defendant. On appeal plaintiff argues that it was error for the trial court to direct verdict in favor of defendant. This court recently held, in *Roedl v. Lane* (3d Dist. 1976), 41 Ill. App. 3d 1062, 1065-66, 355 N.E.2d 354:

> "The test for determining whether a directed verdict is proper is whether all the evidence, viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In making this determination, the trial court may not substitute its judgment for that of the jury as to the credibility of witnesses nor may the court determine the preponderance of the evidence. (*Prange v. Wallenburg* (1st Dist. 1975), 27 Ill. App. 3d 618, 327 N.E.2d 450.) Thus, where the evidence discloses a substantial factual question * * *, or where the assessment of the credibility of the witnesses may be decisive, the court may not direct a verdict. (*Liberio v. Patton* (1st Dist. 1973), 9 Ill. App. 3d 955, 293 N.E.2d 415.) However, a directed verdict is proper where there is some evidence supporting the nonmovant which loses its significance when viewed in the context of all the evidence. (See *Belleville National Savings Bank v. General Motors Corp.* (5th Dist. 1974), 20 Ill. App. 3d 707, 313 N.E.2d 631.) In *People v. Rosochacki* (1969), 41 Ill. 2d 483, 490, 244 N.E.2d 136, 140, our supreme court stated:
>
>> 'Our *Pedrick* decision fully contemplates that trial courts are to decide when weak evidence has so faded in the strong light of all the proof that only one verdict is possible of rendition.' "

■■ In the instant case plaintiff seeks recovery of damages for alleged fraudulent misrepresentation or fraudulent concealment of the medical payments coverage. The Illinois Appellate Court for the First District stated in *Davis v. Nehf* (1st Dist. 1973), 14 Ill. App. 3d 318, 325, 302 N.E.2d 382:

> "In order to establish fraud it must be alleged and proved that

the statement made was of a material fact and not opinion; it must be untrue; the party making the statement must know or believe it to be untrue; *the person to whom the statement is made must believe and rely on it, and have a right to do so*; it must have been made for the purpose of inducing the other party to act; and the reliance by the person to whom the statement is made must lead to his injury. *Broberg v. Mann,* 66 Ill. App. 2d 134, 213 N.E.2d 89." (Emphasis supplied.)

In the instant case resolution of the financial responsibility for plaintiff's accident ultimately culminated in a lawsuit. Within the context of that lawsuit, plaintiff had available various discovery devices to determine the types, if any, of insurance coverage which was held by the American Legion Post. The record indicates that plaintiff did inquire, through interrogatories, as to the existence of liability insurance, but not as to the existence of medical payments coverage. As the Illinois Supreme Court stated in *Morel v. Masalski* (1928), 333 Ill. 41, 47, 164 N.E. 205, 207:

"A person in possession of his mental faculties is not justified in relying upon representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is offered the opportunity of knowing the truth of the representations he is chargeable with knowledge. If he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by the misrepresentations. [Citations.] It is only in cases where the parties do not have equal knowledge or means of knowledge of the facts represented that equity will afford relief on the ground of fraud and misrepresentation."

In the instant case we note that Marmion, who allegedly made the misrepresentation upon which plaintiff bases his action, was merely a sales agent for defendant, and that plaintiff, due to his experience in settling a prior personal injury action, was shown to know that claims adjusters, rather than sales agents, bear the responsibility of settling claims. Plaintiff testified that he "asked him [Marmion] if he had insurance on where I [plaintiff] fell and he said no. That was the extent of the conversation." It was shown that, both through interrogatories in the previous action and plaintiff's acceptance of defendant's settlement draft, plaintiff and his attorneys knew that defendant did have insurance on the property in question. We note that plaintiff did not inquire of Marmion, of defendant's claims adjuster, or of the American Legion Post through interrogatories in the prior action, of the existence of medical pay coverage. The evidence established that plaintiff did not ask defendant's adjuster about medical payments coverage, and that the adjuster made no mention of it.

On the basis of all precedents, we conclude that plaintiff has not established a right to recover on the basis of fraud, where there was no affirmative concealment or specific misrepresentation at a time when plaintiff was not able to determine the accuracy of the information obtained. Marmion, allegedly, simply answered that there was no insurance when first questioned in the early stages of resolution of plaintiff's accident. After that time plaintiff knew, in fact, that insurance coverage did exist. To hold that plaintiff, in a situation like this, could argue that he has the right to set aside the disposition of the prior case solely on the ground that defendant's agents and adjusters did not volunteer information of the medical pay provisions could set an intolerable precedent permitting vacation of many prior settlements. Most policies do have such medical pay provisions and the settlement of claims normally presents no occasion to discuss such provisions. It would be inconsistent, both with precedent and any intelligent analysis of the facts, to hold that there could be maintenance of plaintiff's action for fraud on the facts present in this case. It is clear that, in the context of plaintiff's suit against the American Legion Post, plaintiff had available means to ascertain the types and provisions of insurance held on the American Legion Post property, and was not in a position where he had to rely on any representations made by defendant. We conclude that the trial court properly directed a verdict in favor of defendant.

The judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL, P. J., and SCOTT, J., concur.