CHONITA L. Du BOIS, Indiv. and as Ex'r of the Estate of W. Michael Du Bois, Deceased, Plaintiff-Appellant, v. RUSSELL ROSE, Defendant-Appellee.

Fifth District   No. 5—89—0654

Opinion filed June 28, 1991.

HARRISON, J., dissenting.

Richard A. Cary and Bill J. Milner, both of Wham & Wham, of Centralia, for appellant.

Tracy W. Resch, of Parker, Siemer, Austin, Resch & Resch, of Effingham, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Diane Sill drove a farm tractor and trailer on Brubaker Road in Marion County at night. Both the tractor and the trailer belonged to her father, Russell Rose, the defendant. Neither tractor nor trailer had lights. Plaintiff's decedent, W. Michael Du Bois, was killed when he crashed his car into the rear of the trailer.

Du Bois' widow, individually and as executor of W. Michael Du Bois' estate, brought wrongful death, survival, and family-expense actions against defendant, alleging that defendant was negligent in allowing his daughter to use his tractor and trailer without taillights, a flashing amber light, and a slow-moving-vehicle emblem when he knew or should have known that the farm tractor and trailer would be operated on a public road at night. The case was tried before a jury. At the close of plaintiff's evidence, the circuit court granted defendant's motion for directed verdict. Plaintiff appealed. We reverse.

■ "[V]erdicts ought to be directed *** only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 514.) The opponent is also entitled to the benefit of all reasonable inferences that may be drawn from the evidence. (*Wallis v. Villanti* (1954), 2 Ill. App. 2d 446, 120 N.E.2d 76.) Therefore, we must examine the evidence and the legitimate inferences drawn therefrom to de-

termine whether that evidence so overwhelmingly favors defendant, Rose, that no verdict for plaintiff could ever stand. In doing so, we are mindful that no case should lightly be taken from a jury. *Bailey v. Decatur* (1977), 49 Ill. App. 3d 751, 364 N.E.2d 613.

It is undisputed that Russell Rose owned the farm tractor and trailer involved in the collision and that neither was equipped with or displayed taillights, a flashing amber light, reflectors, or a slow-moving-vehicle emblem as required by the Illinois Vehicle Code. Ill. Rev. Stat. 1989, ch. 95½, pars. 12—205.1, 12—201(b), 12—205, 12—709.

The precise issue presented to us by the parties and the circuit court's ruling is whether the evidence will sustain a finding that Russell Rose allowed and permitted the tractor and trailer to be used on a public road during the period from a half hour after sunset to a half hour before sunrise without these safety devices, when he knew or should have known that the tractor and trailer would be so operated. Evidence of defendant's knowledge appears within the testimony of Deputy Claybourn, who investigated the collision, and defendant's testimony. Both are examined.

Deputy Claybourn testified to his interview of defendant:

"Q. Did he make any statement to you as to what the tractor and trailer was used for, what it was involved with?

A. They were hauling hay from the field.

\* \* \*

Q. And when you were out there (at the accident scene) the following morning was Mr. Rose out there, as well?

A. Yes, he was.

Q. All right. And did you have occasion to talk or did he talk to you and you talk to him when you were doing your investigation?

A. Yes, sir.

Q. And during the course of that time with Mr. Rose did he make any further statements to you about the use of the wagon or his seeing it or knowing where it was?

A. They were making their last trip to the hay field and that was supposed to be the last trip of the evening.

Q. All right. Did Mr. Rose at the accident scene that night or the following day make any statement as to whether or not he was aware that his daughter had borrowed his tractor or wagon earlier?

A. Yes, he knew where it was, who had the vehicle.

Q. And did he say if he knew what the vehicle and the tractor wagon were being used for?

A. For hauling hay."

Defendant, Russell Rose, was called as an adverse witness and testified:

"Q. So would it be correct, sir, whether it was on Friday evening your wife, when your wife told you or Saturday morning when you inquired, when you were aware that your daughter had the tractor, you knew that it did not have any operative flashing amber lights or a slow[-]moving[-]vehicle emblem attached?

A. If I would have thought about it, yes, I knew it.

Q. And you were, also, aware prior to the accident occurring on the night of May 23rd, 1987, that the trailer shown in those photographs did not have any operative taillights or a slow[-]moving[-]vehicle emblem on it, correct?

A. Yes.

Q. And, it is also, correct, isn't it, that the trailer that was involved in the accident on the night of 5-23-87, did not have any flashing amber signal light on it either, did it?

A. That's right.

\* \* \*

Q. So, would your daughter have or whoever got the equipment from your farm to your daughter's home and farm, would they have had to travel the Brubaker Road to get from your place to their place?

A. Yes.

Q. And if at no time did you between learning that the tractor was borrowed and the accident occurring on Saturday night call, telephone, or contact your daughter in any way did you?

A. No, I had no contact with her at all.

\* \* \*

Q. You were aware that your daughter and son-in-law had a hay field there behind their house or had hay before the accident, didn't you?

A. Yes, sir.

\* \* \*

Q. And if necessary you'd even work after dark to try to get it (the hay) up rather than leave it lay out overnight, wouldn't you?

A. Sometimes.

Q. And if the field would not be by your house that would necessitate driving the tractor or wagons and equipment hauling the hay from the field in after dark?

A. Well, yes."

From the testimony set out above, it is reasonable to infer that defendant knew before the wreck that: (1) his daughter had his tractor and trailer; (2) neither tractor nor trailer had proper safety features; (3) the tractor and trailer might have to be used on Brubaker Road, a public road; (4) the tractor and trailer were being used to cut and haul hay; and (5) hay had to be taken from the field even if it meant working after dark, which would necessitate the tractor and trailer being driven on a public road after dark. These inferences prevent the direction of a verdict.

■ There is authority which states that evidence can lose its significance when viewed in the context of all the evidence and, therefore, be incapable of preventing a directed verdict. (*Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 313 N.E.2d 631, citing *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Liberio v. Patton* (1973), 9 Ill. App. 3d 955, 293 N.E.2d 415; *Perec v. Little* (1969), 106 Ill. App. 2d 308, 245 N.E.2d 306; see also *Frisch Contracting Service Corp. v. Northern Illinois Gas Co.* (1981), 93 Ill. App. 3d 799, 417 N.E.2d 1070.) This rule allows courts to decide whether "weak evidence has so faded in the strong light of all of the proof that only one verdict is possible of rendition." *Rosochacki*, 41 Ill. 2d at 490, 244 N.E.2d at 140.

The rule that evidence can lose significance and, therefore, the power to prevent a directed verdict first was announced in *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 313 N.E.2d 631. Because facts give birth to the rule, not vice versa, the facts of the *Belleville National Savings Bank* case, therefore, are examined to determine the predicate to the invocation of the rule.

In *Belleville National Savings Bank*, plaintiff was injured in a one-car accident. He claimed he crashed into an overpass abutment when the steering wheel of the car he was driving jammed, making it not only impossible to turn to the right but also causing the steering wheel to turn on its own volition 180° to the left. An eyewitness, however, testified that after the crash, the car wheels faced straight ahead, rather than to the left. Although plaintiff denied talking to a trooper, a trooper testified that plaintiff did talk to him and admitted to having had "a couple of drinks." Furthermore, plaintiff told him that he could not remember anything about the wreck. Plaintiff's experts testified that although it was possible for foreign matter to jam the steering mechanism, and foreign particles, in fact, were found in

a hose leading to the power steering mechanism, none, however, could have entered the mechanism, because they were too big to fit through the hose. Plaintiff's experts also testified that after the wreck the steering mechanism could not be made to malfunction. It was on this evidence that plaintiff wanted to draw the inference that because there were some particles in the hose, it could be inferred that other particles capable of jamming the steering could have been within the mechanism. In affirming a directed verdict, the appellate court ruled that that inference could not be drawn, because plaintiff's witnesses found nothing wrong with the steering mechanism and there was no evidence that it had jammed. The only evidence left in the case favorable to plaintiff, therefore, was plaintiff's own testimony that the steering first had jammed and then had turned on its own volition 180° to the left. However, that testimony pretty well had been reduced to a nullity by the contradictory testimony of the trooper that plaintiff admitted to having "a couple of drinks" and was unable to remember anything about the wreck. In addition, the testimony that after the wreck plaintiff's wheels faced straight ahead, rather than to the left, struck the second blow of this quick right- then left-fist knockout combination to the jaw of plaintiff's case. The implication of *Belleville National Savings Bank* is clear. The court felt that plaintiff's case was "bogus." In this context, it is seen that evidence can lose its significance when it is refuted by physical evidence and admissions made by the proponent and when it is not supported by physical evidence and expert testimony. It is then that the evidence so fades in the strong light of all the proof that only one verdict is possible. *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136.

■■ This is not the case here. In this case, the argument for a directed verdict is predicated on a claim that the testimony of Deputy Claybourn is uncertain whether defendant knew of Sill's use of the tractor and trailer before the wreck. We think that defendant's testimony itself clears this up. Defendant's testimony shows that he knew either on Friday or Saturday morning that Sill had the tractor and trailer while the wreck was on Saturday night. But in any event, to whatever extent the testimonies of both Deputy Claybourn and defendant are uncertain as to when defendant knew all the facts which would support a verdict against him, the fact remains that the uncertainty allows inferences to be drawn both ways. And, the fact still remains that neither inference has lost its significance; neither has been refuted by physical evidence; neither has been refuted by an admission; and neither is unsupported by physical evidence and expert testimony.

Viewed most favorably to plaintiff, the evidence allows inferences to be drawn that: (1) defendant, Rose, did not equip his tractor or trailer with taillights, flashing amber light, and slow-moving-vehicle emblem; and (2) defendant, Rose, either knew or should have known that the tractor and trailer would be operated on a public road at night without these safety items. These inferences form a jury question. Deputy Claybourn's and Russell Rose's testimonies are sufficient to constitute "any evidence tending to prove the allegations in [the] complaint." *Sherrod v. Brannock* (1978), 67 Ill. App. 3d 972, 973, 385 N.E.2d 735, 736.

■ The defendant argues that Russell Rose owed no duty to plaintiff's decedent simply because he was the owner of the vehicle. He correctly states that in Illinois, an owner who lends his vehicle to another for the borrower's own purpose is not liable for the borrower's negligence unless the borrower is the agent or servant of the owner, and if the borrower were a servant or agent of the owner, the doctrine of *respondeat superior* would apply and the driver's negligence would be imputed to the owner. (See *Prewitt v. Hall* (1969), 113 Ill. App. 2d 198, 252 N.E.2d 43; *Scott v. Valentine* (1971), 132 Ill. App. 2d 101, 268 N.E.2d 485.) He explains, "liability for damage caused by the negligent act of the driver of an automobile, not arising under the doctrine of *respondeat superior,* does not attach against a person other than the driver, unless that person is the owner of the automobile or possesses the right to control the driving of it, and such owner or possessor is riding in the automobile at the time of the injury and negligently fails to properly control the driver." (*Palmer v. Miller* (1942), 380 Ill. 256, 260, 43 N.E.2d 973, 975.) Lastly, he argues that absent *respondeat superior,* and absent the presence of the owner in the vehicle, the only other theory of liability that will attach to the owner due to negligence of a third person is negligent entrustment.

Negligent entrustment is a doctrine which places a duty upon an owner of a vehicle to refrain from entrusting his motor vehicle to one whose incompetency, inexperience, or recklessness is known or should be known to the owner. See *Rosenberg v. Packerland Packing Co.* (1977), 55 Ill. App. 3d 959, 370 N.E.2d 1235.

Defendant argues that the facts of this case cannot support any of the theories enumerated above so as to sustain liability for the negligence of another. We agree. That, however, is not the issue. We hasten to make clear that plaintiff's complaint does not seek to impute negligence, nor does it claim negligent entrustment. Rather, it claims

direct negligence by defendant, Russell Rose. It is his independent act that is at issue here.

Russell Rose owned a tractor and trailer that were not equipped to be used on a roadway because both lacked taillights, reflectors, a flashing amber light, and a slow-moving-vehicle emblem. In and of itself, defendant's failure to affix, attach, or repair his tractor and trailer is not a negligent act, especially if he never intended to operate these implements upon a public road. However, the testimony at trial shows that he knew that State law required such items on farm implements if they were to be used on a public road. He knew that his tractor and trailer lacked this safety equipment. He knew before W. Michael Du Bois smashed headlong into the back of his darkened and nearly invisible tractor and trailer that his daughter had borrowed these ill-equipped farm implements. He stated that had he been present at the time his daughter borrowed the equipment, he would have warned her not to use them at night; yet, he never contacted her after he became aware that she had borrowed the equipment. Lastly, he knew that in order for the tractor and trailer to be returned to his home they would necessarily have to be driven five miles on Brubaker road, a public roadway. Under these circumstances, directing a verdict for defendant was erroneous.

The circuit court is reversed and the cause is remanded.

CHAPMAN, J., concurs.

JUSTICE HARRISON, dissenting:

Plaintiff's cause of action was premised exclusively on the provisions of chapter 12 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 12—100 *et seq.*). Specifically, plaintiff sought to establish a *prima facie* case of negligence by showing (1) that the tractor and trailer involved in the collision were operated on the highway without displaying the slow-moving-vehicle emblem required by section 12—709 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 12—709) and (2) that those vehicles had been driven or moved on the highway during the period from a half hour after sunset until a half hour before sunrise (Ill. Rev. Stat. 1989, ch. 95½, par. 12—201(b)) without exhibiting either the taillights or amber signal lamp required by Code sections 12—205 and 12—205.1 (Ill. Rev. Stat. 1989, ch. 95½, pars. 12—205, 12—205.1).

There is no dispute that defendant was not directly involved in the events which culminated in the collision. He was not the driver of the tractor and trailer. He was not a passenger. He was nowhere near the scene. His sole connection with the incident was that the tractor and trailer belonged to him. Plaintiff argued that he should nevertheless be held liable because he "knowingly permitted" those vehicles to be driven or moved on the highway with the foregoing safety deficiencies. (Ill. Rev. Stat. 1989, ch. 95½, par. 12—101(a).) The circuit court correctly found this argument to be devoid of evidentiary support.

Prior to the accident, defendant was certainly aware that his tractor and trailer did not have the specified equipment. The mere absence of that equipment, however, does not violate the law. The unambiguous language of the statutes makes clear that the equipment is required only when a vehicle is operated on a highway, and lights are necessary only at night. Accordingly, if a tractor and trailer are simply moved over land from one field to another, the statutes invoked by plaintiff are completely inapplicable. Likewise, if they are operated during the period from one-half hour before sunrise to one-half hour after sunset, the law does not require that they display lights.

Because applicability of the statutory prohibitions turns on the circumstances under which a vehicle is operated, defendant could not possibly be held liable unless he was aware that the tractor and trailer here were going to be used at a time and in a place which would result in a violation of the law. There was no evidence that defendant had such knowledge. The testimony recited by the majority shows at most that defendant had become aware that his equipment had been used improperly sometime before the end of the night on which the collision occurred or by the following morning. That testimony does not show that defendant had knowledge that the equipment would be used in a prohibited fashion, or even that it would be used at all, prior to when the accident actually took place.

During the argument on the directed verdict motion, counsel for plaintiff actually conceded that there was no evidence that defendant knew that the tractor "was moved from his house to his daughter's house until after it was done." The most plaintiff's counsel could make of the evidence was that once defendant became aware that the vehicle had been moved, he should reasonably have inferred that it would have to be returned and that he should have called his daughter prior to its return to warn her not to bring it back on the highway after dark. The problem with this argument, as the circuit court recognized, was that there was no evidence that the accident occurred when the tractor and trailer were being returned.

The majority looks past all of this and contends that the evidence as to when defendant first had knowledge of the prohibited use of the vehicles was, at least, ambiguous. Given this perceived ambiguity, the majority contends that the jury could have inferred that defendant knew in advance that the vehicles might be operated in violation of the law just as easily as it could have inferred that he had no such advance knowledge. The majority contends that the existence of two such equally possible inferences precludes the entry of a directed verdict. I disagree. What the majority fails to appreciate is that there was no factual basis in the record for selecting one of these possibilities over the other. The jury could have chosen between them only through surmise or conjecture. This is fatal to plaintiff's cause, for it is fundamental that in a negligence action the jury must base its decision on evidence, not guess or speculation. *Morton v. F.B.D. Enterprises* (1986), 141 Ill. App. 3d 553, 560, 490 N.E.2d 995, 999.

Even if there had been evidence to support plaintiff's claim of prior knowledge, a directed verdict was nevertheless proper. Plaintiff's theory was that defendant "knowingly permitted" the use of the vehicles in an improper way in that he failed to warn his daughter that the tractor and trailer should not be operated on the highway without a slow-moving-vehicle emblem and that they should not be operated on a highway after dark at all since they did not have the necessary lights. In other words, plaintiff's negligence theory was essentially that defendant had breached a duty to warn. Plaintiff, however, has not cited, and we have not found, any authority under which the "knowingly permit" language of the statute can be interpreted to embrace an affirmative obligation to warn.

In any case, the existence of such a duty still could not aid plaintiff here. Indeed, her claim would fail even under the standards set forth in section 405 of the Restatement (Second) of Torts (1965), which follows the standards set forth in section 388 of the Restatement (Second) of Torts (1965), dealing with suppliers of "chattel known to be dangerous for intended use." Under those provisions, one who gives or lends a chattel for another to use, knowing or having reason to know that it is or is likely to be dangerous for the use for which it is given or lent, must exercise reasonable care to inform those for whose use the chattel is supplied of its dangerous condition or the facts which make it likely to be dangerous if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. (Restatement (Second) of Torts §388, Comment on Clause (b), at 306 (1965).) This requirement was not met here. The tractor and trailer

were borrowed from defendant by a relative who was, herself, a farmer. Based on the record before us, I see nothing which would have given defendant any reason to believe that she would not fully appreciate the dangers involved in operating those vehicles under the circumstances which led to the collision. The majority cites nothing which would support a contrary finding.

For the foregoing reasons, I believe that the directed verdict entered by the circuit court was entirely proper. I therefore dissent.