VIVIAN RION, Ex'r of the Estate of Roy Brown, Deceased, Plaintiff-Appellant,
*v.* ARTHUR F. POWERS, JR., Defendant-Appellee.

Fifth District   No. 77-249

Opinion filed July 28, 1978.

JONES, J., dissenting.

Harris & Lambert, of Marion, for appellant.

Feirich, Schoen, Mager, Green and Associates, of Carbondale, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
Plaintiff Vivian Rion, as executor of the estate of Roy Brown, appeals from a judgment of the circuit court of Williamson County entered on a jury verdict in favor of defendant Arthur Powers, Jr. Plaintiff-executor brought this wrongful death action on behalf of the heirs of decedent to recover damages occasioned by the alleged negligence of defendant in the operation of his automobile.

At approximately 4 p.m. on June 18, 1973, the deceased Roy Brown, a pedestrian standing upon a median located at the intersection of Route 13 and North Russell Street in Marion, Illinois, was fatally injured when defendant's automobile proceeding in a northerly direction on Russell Street collided with an automobile traveling East on Route 13. The eastbound vehicle was driven by Wrayanne Flasar who was dismissed as a co-defendant in this action the first day of trial.

Among plaintiff's many contentions of error on appeal is the action of the trial court in denying her motion for a judgment *n.o.v.* In support of the motion plaintiff argued that the evidence so overwhelmingly favored plaintiff that a judgment *n.o.v.* should have been granted. In deciding this question we briefly review the evidence.

Wrayanne Flasar, the driver of the eastbound vehicle, and Charles Meadows, the driver of a State highway maintenance truck also traveling east on Route 13, were the only occurrence witnesses for the plaintiff. Flasar testified that she had been traveling in the outside lane of Route 13 until she approached the State truck at which time she decreased her speed to approximately 35 to 40 miles per hour and moved to the inner lane. Flasar further testified that as she passed the truck the signal light at the intersection of Route 13 and North Russell Street was yellow, that it turned to green before she reached the intersection, that she observed the decedent standing on the median to the west side of the light standard holding onto the light standard with both arms, that she noticed the defendant's car stopped at the south side of the intersection and that when she entered the intersection on her green signal the defendant's car started into the intersection where the collision occurred. Flasar explained that the force of the impact propelled her automobile into the light standard which then collapsed on the deceased thereby causing his death.

Charles Meadows testified that he and Clarence Hish had been engaged in striping the center line of the highway and were in the process of picking up the orange cones from the highway at the time the accident occurred on June 18, 1973. To accomplish this Meadows drove the vehicle in the right-hand lane at approximately 10 to 15 miles per hour while Hish sat in the rear of the truck and picked up the cones. Meadows stated that as the Flasar vehicle approached Russell Street the signal light was red but that it turned green prior to her entry into the intersection. Meadows further testified that following the impact he pulled through the intersection on the same green light and parked on the right shoulder of new Route 13.

James Fosse, a Marion, Illinois, patrolman dispatched to the scene, testified that he examined the lights immediately following the accident and concluded that they were operating normally. He explained that the signals consisted of a two-phase light system; that is, the east-west lanes

moved at the same time followed by an interval of 3 to 5 seconds when the north-south lanes would then move. Finally, Fosse testified that the lights do not operate from yellow to green but that the usual sequence is green-yellow-red.

Several other witnesses testified on behalf of plaintiff that at the time of his death the deceased, although 87 years old, was a cautious, industrious person in excellent health for an elderly man. The defendant's case consisted of the testimony of Imogene Powers, defendant's wife who was a passenger in the defendant's car at the time of the accident, as to defendant's careful driving habits. The court disallowed any testimony by either defendant or his wife concerning the accident itself on the grounds of the Illinois Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2). No error is raised with regard to the court's ruling. By way of impeachment of the plaintiff's witnesses, defense counsel argues that Flasar's testimony concerning the color of the lights was incredible because of Fosse's investigation, that Flasar's testimony at trial that she was traveling 30 to 35 miles per hour at the time of the accident was impeached by her statement at the coroner's inquest that her speed immediately prior to the accident was 25 to 45 miles per hour, and that the dismissal of the suit against her rendered her testimony biased. The testimony of Charles Meadows, on the other hand, remains virtually unimpeached aside from its obvious conflict with Flasar's account of the light sequence.

The defendant reasons that the jury's verdict was based on one or more of the following conclusions:

(1) Plaintiff's evidence failed to prove that defendant entered the intersection on a red light;

(2) plaintiff's evidence failed to establish that defendant's action or inaction proximately caused the decedent's fatal injury;

(3) plaintiff's evidence failed to prove that the decedent was not contributorily negligent.

■■ We believe that there can be no question that the latter two propositions may not be used to justify the verdict in this case. The evidence clearly established that Roy Brown was in good health when he visited the neighborhood grocery just 10 minutes prior to the accident, that he was exercising due care for his safety while standing on the median waiting for traffic to stop on Route 13, and that, in any case, his "shakiness" (as defendant terms it) could not possibly have contributed to the accident which claimed his life. Thus, the only viable explanation for the verdict is that the jury believed defendant's light was green and that the Flasar automobile entered the intersection on a red light.

■■ It is well settled in Illinois that judgments *n.o.v.* ought to be entered only where the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict

on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.) We believe this is one of those rare cases where a judgment *n.o.v.* should have been granted by the trial court.

While it is true that Mrs. Flasar testified that the light sequence was yellow-green, and according to Patrolman Fosse's testimony, the actual sequence must have been red-green, still Mrs. Flasar testified that the signal was green at the time she entered the intersection and this fact was corroborated by a disinterested witness, Charles Meadows. In addition, one cannot discount the action of Meadows in continuing through the intersection on the same signal as Mrs. Flasar. Finally, had the signal been green for north-south traffic, it would be reasonable to assume that the decedent would have made some movement toward the crosswalk since he was headed south to his home on Russell Street. Indeed, the only evidence presented by defendant which tended to support his theory was Imogene Powers' testimony as to her husband's careful driving habits. We think it was patently unreasonable for the jury to have ignored the unimpeached testimony of Meadows and to have concluded, as it evidently did, that Flasar entered the intersection when her light was red. The only testimony adduced by either side at trial was that the east-west signal was green at the time of the accident. This testimony went to the only true issue of the case and stood unrefuted by defendant's evidence. Thus, all of the evidence taken in its aspect most favorable to the defendant so overwhelmingly favors the plaintiff in this action that the trial court should have allowed plaintiff's motion for a judgment *n.o.v.*

For the foregoing reasons we reverse the judgment of the circuit court of Williamson County and remand the cause for a new trial on the issue of damages only.

Reversed and remanded.

WINELAND, J., concurs.

Mr. JUSTICE JONES, dissenting:

The majority has greatly simplified the resolution of the factual issues in this case by singling out parts of the evidence which they find the jury should have believed and discarding other evidence and inferences which they find the jury should have disregarded.

The jury, burdened as it was with conflicting evidence, plausible inferences flowing therefrom, and the serious impeachment of the plaintiff's principal witness (a co-defendant whose case had been settled with plaintiff), and further burdened with the aura of credibility presented by the witnesses as they testified, found the issues for the defendant.

Weighing upon the collective minds of the jury, but not the majority, was the testimony of Wrayanne Flasar that the sequence of the lights for her lane of travel was yellow to green. In this testimony she was conclusively impeached by the testimony of Officer Fosse which established the sequence as red to green.

Flasar's testimony also was that as she approached the intersection she noticed the defendant's car stopped at the south side of the intersection and that as she entered the intersection at 30 to 35 miles per hour (or at 25 to 45 miles per hour, depending on which version of Flasar's testimony is believed) on her green signal, the defendant's car started into the intersection where the collision occurred. This testimony of Flasar would mean that the defendant stopped his car at the intersection when his light was green and proceeded into the intersection when his light turned to red.

Charles Meadows made his observations of the events while guiding his truck carefully along a row of traffic warning cones to permit their pick-up by a man seated at the rear of the truck.

Believing that there is no justification whatever for reversing the jury's verdict, and that defendant has been deprived of his right to a jury trial, I respectfully dissent.